## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| DRAMA CAMP PRODUCTIONS, INC., and J&M LLC, d/b/a SHADES, on behalf of themselves and all others similarly situated,    * * * * * | |
|        Plaintiffs,    * * | |
| v.    * * | CIVIL ACTION NO.: 1-20-cv-266 |
| MT. HAWLEY INSURANCE CO., a corporation,    * * * | |
|        Defendant.    * * | |

## CLASS ACTION COMPLAINT

Plaintiffs Drama Camp Productions, Inc., and J&M LLC, d/b/a Shades, bring the following Complaint against Defendant Mt. Hawley Insurance Company:

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Drama Camp Productions, Inc. ("Drama Camp"), is a corporation organized under the laws of the State of Alabama, with its principal place of business located in Alabama.

2.      Plaintiff J&M LLC, d/b/a Shades ("Shades"), is an Alabama limited liability company with two Members, both of whom are resident citizens of the State of Alabama.

3.      Defendant Mt. Hawley Insurance Co., Inc. ("Mt. Hawley"), is a corporation organized under the laws of the State of Illinois, with its principal place of business located in Illinois.

4.      This Court has subject-matter jurisdiction of this class action pursuant to 28 U.S.C. § 1332(d)(2)(A), because the matter in controversy, the aggregated claims of the members of each

proposed Class, exceeds the sum of five million dollars, exclusive of interest and costs, and Plaintiffs, members of each proposed Class, are citizens of a state different from Mt. Hawley; and pursuant to 28 U.S.C. § 1332(d)(4)(A)(II)(cc), in that the only Defendant is not a citizen of the state in which this action has been filed.

5.      Venue is proper in the Southern District of Alabama pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims asserted occurred in this judicial district.  Venue is also proper in the Southern District of Alabama pursuant to 28 U.S.C. § 1391(b)(1), in that the Defendant, Mt. Hawley, is deemed to reside in this judicial district pursuant to 28 U.S.C. § 1391(d).

## FACTUAL BACKGROUND

6.      Plaintiff Drama Camp owns and operates a children's drama studio in Mobile, Alabama.

7.      Plaintiff Shades owns and operates several retail stores in Alabama, as well as in four other states, where it sells sunglasses and sportswear.  Plaintiff Shades has a retail store in and is headquartered in Orange Beach, Alabama.

8.      Mt. Hawley issued Drama Camp a commercial property insurance policy, with a policy period of September 25, 2019, to September 25, 2020, bearing policy number GPD0001680.

9.      Mt. Hawley issued Shades a commercial property insurance policy, with a policy period of September 21, 2019, to September 21, 2020, bearing policy number MCP0165573.

10.     Both Plaintiffs' policies are all-risk policies that insure against all risks of direct physical loss unless the loss is specifically excluded by the policy.

11.     Plaintiff Shades's policy has the following Mt. Hawley coverage forms: Building and Personal Property Coverage Form CP-0010(06/07), Business Income (and Extra Expense)

Coverage Form CP-0030(06/07), and Causes of Loss-Special Form CP-1030(06/07).  A copy of Shades's policy is attached hereto as Exhibit A.

12.     Plaintiff Drama Camp's policy has the following Mt. Hawley coverage forms: Building and Personal Property Coverage Form CP 0010(10-12), Business Income with Extra Expense Coverage Form CP 0030(10-12), and Causes of Loss-Special Form CP 1030(10-12).  A copy of Drama Camp's policy is attached hereto as Exhibit B.

13.     Mt. Hawley Coverage Form CP-0010(06/07) is identical to its Coverage Form CP 0010(10-12).  Mt. Hawley Coverage Form CP-0030(06/07) is identical to its Coverage Form CP 0030(10-12).  Mt. Hawley Causes of Loss-Special Form CP-1030(06/07) is identical to its Causes of Loss-Special Form CP 1030(10-12).

14.     Each Plaintiff's Business and Personal Property Coverage Form provides as follows:

> **A.     Coverage**
>
> > We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

Exh. A, Coverage Form CP-0010(06/07), p. 1; Exh. B, Coverage Form CP 0010(10-12), p. 1.

15.     Covered Property at the premises described in both Plaintiffs' policies' Declarations includes their business premises.

16.     Each Plaintiff's Coverage Form addressing Business Income and Extra Expense provides:

> **A.     Coverage**
>
> > **1.     Business Income**
> >
> > > . . . .

3

> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which Business Income Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss. . . .

Exh. A, Coverage Form CP-0030(06/07), p. 1; Exh. B, Coverage Form CP 0030(10-12), p. 1.

17. Each Plaintiff purchased coverage for Extra Expense, which is:

> **2. Extra Expense**
>
> . . . .
>
> **b.** Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.

Exh. A, Coverage Form CP-0030(06/07), p. 1; Exh. B, Coverage Form CP 0030(10-12), p. 1.

18. Plaintiff Drama Camp's policy further provides:

> **A. Covered Causes of Loss**
>
> When Special is shown in the Declarations, Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy.

Exh. B, Coverage Form CP 1030(10-12), p. 1.

19. Plaintiff Shades's policy provides:

> **A. Covered Causes of Loss**
>
> When Special is shown in the Declarations, Covered Causes of Loss means Risks of Direct Physical Loss unless the loss is:
>
> **1.** Excluded in Section B., Exclusions; or
>
> **2.** Limited in Section C., Limitations;
>
> that follow.

Exh. A., Coverage Form CP-1030(06/07), p. 1.

4

20.     Each Plaintiff's policy shows "Special" in the Declarations.

21.     Each Plaintiffs' policy further provides:

**B.     Exclusions**

. . . .

**2.**     We will not pay for loss or damage caused by or resulting from any of the following . . . .

**b.**  Delay, loss of use or loss of market.

. . . .

**3.**     We will not pay for loss or damage caused by or resulting from any of the following, **3.a.** through **3.c.**  But if an excluded cause of loss that is listed in **3.a.** through **3.c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

. . . .

**b.**  Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

Exh. A, Coverage Form CP-1030(06/07), pp. 3, 4; Exh. B, Coverage Form CP 1030(10-12), pp. 3, 4.

22.     Both Plaintiffs' policies also contain the following:

**B.     Exclusions**

1.     We will not pay for loss or damage caused directly or indirectly by any of the following.  Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**a.  Ordinance Or Law**

The enforcement of or compliance with any ordinance or law:

**(1)** Regulating the construction, use or repair of any property; or

**(2)** Requiring the tearing down of any property, including the cost of removing its debris.

5

This exclusion, Ordinance Or Law, applies whether the loss results from:

**(a)** An ordinance or law that is enforced even if the property has not been damaged; or

**(b)** The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property, or removal of its debris, following a physical loss to that property.

Exh. B., Coverage Form CP 1030(10-12), p. 1; Exh. A, Coverage Form CP-1030(06/07), p. 1.

23. Shades's policy has the following endorsement:

**Absolute Pollution Exclusion Endorsement**

This endorsement replaces any existing terms and/or exclusions regarding pollution liability within this policy.

We will not pay for loss, damage, cost or expense caused directly or indirectly by any of the following. Such loss, damage, cost or expense is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss:

**A.** Property damage arising out of the actual, alleged or threatened discharge, dispersal, release or escape of "pollutants," or contaminants;

    **1.** At or from premises owned, leased, rented or occupied by you,

    **2.** At or from any site or location used by or for you or others for the handling, storage, disposal, processing or treatment of waste,

    **3.** Which are at any time transported, handled, stored, treated, disposed of or processed as waste by or for you or any person or organization for whom you may be legally responsible, or,

    **4.** At or from any site or location on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations;

        **a.** If the "pollutants" are brought on or to the site or location in connection with such operations, or

        **b.**    If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize the "pollutants."

**B.**    Any loss, damage, cost or expense arising out of any governmental direction or request that you test for, monitor, clean up, treat, remove, detoxify or neutralize "pollutants" or in any way respond to or assess the effects of "pollutants."

This includes loss or damage caused by or resulting from contributing to or made worse by actual, alleged or threatened release, discharge, escape or dispersal of contaminants and/or pollutants, all of which direct or indirect, proximate or remote, or in whole or in part, caused by, contributed to, or aggravated by any damage insured by the policy.

"**Pollutants**" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. In addition to "pollutants" to be disposed of, waste also includes materials to be recycled, reconditioned or reclaimed. It also includes any material which after its release, dispersal or discharge, can cause or threaten damage to human health and/or human welfare, or causes or threatens damage, deteriorations, loss of value, marketability and/or loss of use, to insured property; including, but not limited to bacteria, fungi, virus, or hazardous substances as listed in the Federal Pollution Control Act, Clean Air Act, Resource Conservation and Recovery Act of 1976 and/or Toxic Substances Control Act or as designated by the U.S. Environmental Protection Agency.

24.    The State of Alabama, the United States, and the world are in the midst of the novel coronavirus pandemic.  The virus causes the viral illness known as COVID-19.  The virus is extremely contagious.  To date, Alabama has had over 8,100 coronavirus cases and 298 of those people have died.

25.    On March 13, 2020, Donald J. Trump, the President of the United States, declared the COVID-19 pandemic a National Emergency.

26.    Also on March 13, 2020, Kay Ivey, Governor of the State of Alabama, declared the COVID-19 pandemic a State Public Health Emergency.  Gov. Ivey directed the appropriate state agencies to exercise their statutory and regulatory authority accordingly.

27.     On March 27, 2020, Dr. Scott Harris, the Alabama State Health Officer, entered a Statewide Order which provided, among other things, that effective March 28, 2020, at 5:00 PM, certain "non-essential" businesses would be closed to non-employees.  A copy of Dr. Harris's Order is attached hereto as Exhibit C.  Among the "non-essential" businesses shut down were performing-art centers, which encompassed Plaintiff Drama Camp, and retail clothing and clothing-accessory stores, which encompassed Plaintiff Shades.  Exhibit C, p. 2.

28.     Effective April 30, 2020, at 5:00 PM, Alabama retail establishments were allowed to reopen at no more than 50 percent of the normal occupancy load.  Plaintiff Shades has reopened under this restriction.  Performing-arts centers were left shut down, so Plaintiff Drama Camp remains shut down.  A copy of this latest order by Dr. Harris is attached as Exhibit D.  The aforesaid orders of Gov. Ivey and Dr. Harris were valid exercises of the government's executive police power.

29.     Plaintiffs have suffered substantial losses of business income due to the shutdown, and submitted claims for their losses to Mt. Hawley under the business-income and extra-expense provisions of their insurance policies.[1]

30.     Mt. Hawley denied both Plaintiffs' claims because, it said, "[Y]ou have not sustained direct physical loss of or damage to any property that would trigger your business income coverage."  Exhibit E, p. 4; Exhibit F, p. 6.

31.     Plaintiffs did, however, sustain direct physical loss of covered property, their business premises, because the State Health Officer issued orders that shut their businesses down. There was a direct physical loss of their business premises because their business premises were rendered physically unusable for their intended purposes.  The loss was direct because the orders

---

[1] Plaintiffs continue to suffer substantial losses of business income due to the present shutdown and restricted-occupancy orders.

were expressly directed to categories of businesses to which Plaintiffs' businesses belong, and because the orders were the direct cause of Plaintiffs' loss of the use of their business premises.

32.     Further, Plaintiff Shades has now sustained a direct physical loss of 50% of its business premises, due to the 50 percent occupancy restrictions, for the reasons set out in the preceding paragraph.

33.     Both denial letters also relied upon the policies' exclusion for "Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body." But this exclusion is overly broad, ambiguous, irreconcilable with other policy provisions, and with the purpose of an all-risk insurance policy. This provision would exclude coverage whenever a human being or any kind of entity had any kind of role in a loss, which would render the policies' coverage illusory and the policies practically worthless. Presumably only Acts of God would be covered. The exclusion is therefore unenforceable.

34.     Both denial letters also relied on the exclusion for the enforcement of any ordinance or law regulating the use of any property. But when this exclusion is read in its entirety, it only applies to actual or proposed construction, repair, or demolition work, or work of that nature. Moreover, the complete-shutdown orders of the State Health Officer did not "regulate" the use of Plaintiffs' property – they prohibited its use for its intended purpose. Finally, the exclusion only applies to building codes and the like.

35.     Mt. Hawley also relied on the Absolute Pollution Exclusion with respect to its denial of Shades's claim. The term "pollutants" is defined to include virus. The exclusion, however, by its terms only applies to a release of pollutants that is connected in some manner to the insured, to a release from a waste facility, and to a governmental direction or request that the insured remediate pollutants. That is not the case here. More important, the exclusion's first

9

sentence states that it replaces existing exclusions "regarding pollution liability."  So, the exclusion by its own terms only applies to liability insurance, not to business-property and business-income insurance.

36.     Both Plaintiffs' denials were also based on the loss-of-use aspect of the policies' "[d]elay, loss of use or loss of market" exclusion.  But this entire provision excludes lost business income.  It was probably originally intended to exclude consequential damages under a business-property-insurance policy, but when applied to a business-income-insurance policy, it nullifies the precise reason for buying the coverage and thus is unenforceable.

37.     Based upon the foregoing, Mt. Hawley improperly denied Plaintiffs' claims.

## CLASS ACTION ALLEGATIONS

38.     This action is brought as a plaintiffs' class action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3).  Plaintiffs bring this action on their own behalf, and on behalf of all others similarly situated, as representatives of the following Classes:

### The Declaratory-Judgment Class

All businesses in the State of Alabama that were issued insurance policies by Mt. Hawley Insurance Company with Building and Personal Property Coverage Form CP-0010(06/07) or CP 0010(10-12), Business Income (and Extra Expense) Coverage Form CP-0030(06/07) or Business Income with Extra Expense Coverage Form CP 0030(10-12), and Causes of Loss-Special Form CP-1030(06/07) or CP 1030(10-12), whose policies were in effect on and after March 27, 2020, and who fall within any of the categories

of "non-essential" businesses specified in the Alabama State Health Officer's Order of March 27, 2020.

Excluded from the Class are (1) the officers, directors, and employees of Mt. Hawley Insurance Company, and its affiliated entities; and (2) all judicial officers of the United States who preside over or hear this case, and all persons related to them as specified in 28 U.S.C. § 455(b)(5).

### The Breach-of-Contract Class

All businesses in the State of Alabama that were issued insurance policies by Mt. Hawley Insurance Company with Building and Personal Property Coverage Form CP-0010(06/07) or CP 0010(10-12), Business Income (and Extra Expense) Coverage Form CP-0030(06/07) or Business Income with Extra Expense Coverage Form CP 0030(10-12), and Causes of Loss-Special Form CP-1030(06/07) or CP 1030(10-12), whose policies were in effect on and after March 27, 2020, who fall within any of the categories of "non-essential" businesses specified in the Alabama State Health Officer's Order of March 27, 2020, who filed claims after that date under the policies' Business Income (and Extra Expense) Coverage Form or Business Income with Extra Expense Coverage Form, and whose claims were denied by Mt. Hawley Insurance Company because there was allegedly no coverage under the policies.

Excluded from the Class are (1) the officers, directors, and employees of Mt. Hawley Insurance Company, and its affiliated entities; and (2) all judicial officers of the United States who preside over or hear this case, and all persons related to them as specified in 28 U.S.C. § 455(b)(5).

39.     The members of the Classes are readily identifiable from Mt. Hawley's computerized records.

40.     Upon information and belief, the Classes both consist of hundreds and possibly thousands of members, and each is therefore so numerous that individual joinder of all members is impracticable.  The members of the Classes are geographically dispersed throughout the State of Alabama.

41.     There are questions of law and fact common to both Classes, which predominate over any questions affecting only individual members of the Classes.   The questions common to the Classes include, but are not limited to, the following:

**(a)**     Do the policies' Business Income Coverage and Extra Expense Coverage Forms cover losses ultimately caused by COVID-19?

**(b)**     Do the policies' Business Income Coverage and Extra Expense Coverage Forms cover losses directly caused by the orders of the government authorities that shut down or restricted access to the Class members' businesses?

**(c)**     Is it a breach of Mt. Hawley Insurance Company's contractual obligations under the policies for it to deny the Class members' claims under the

Business Income Coverage and Extra Expense Coverage Forms, for lack of coverage under the policies?

**(d)**   What is the meaning of the policy provision "direct physical loss of or damage to" covered property?

**(e)**   What fact situations does the policies' "ordinance or law" exclusion apply to?

**(f)**   What fact situations does the policies' "loss of use" exclusion apply to?

**(g)**   What fact situations does the policies' "acts or decisions" exclusion apply to?

42.   Plaintiffs' claims are typical of those of the Classes and are based on the same legal theories as those of the members of the Classes.  Plaintiffs' claims and those of the Classes' members all arise from the same pattern or practice by Mt. Hawley Insurance Company, as set out above.

43.   Plaintiffs will fairly and adequately protect the interests of the members of the Classes. Plaintiffs have retained counsel who are highly experienced and competent in class-action litigation and other complex litigation, and who are knowledgeable regarding the applicable law. Plaintiffs and their counsel intend to prosecute this action vigorously.  Neither Plaintiffs nor their counsel have any interests that might cause them not to vigorously pursue this action.  Plaintiffs' interests are coextensive with those of the Classes, and Plaintiffs have no interests adverse to those of the Class members.

44.   Plaintiffs have made arrangements with their counsel for the discharge of their financial responsibility to the Classes.  Plaintiffs' counsel have the necessary financial resources to adequately and vigorously litigate this class action.

45.     A class action is superior to all other available means for the fair and efficient adjudication of this controversy, and it is desirable to concentrate the litigation of the claims in this forum.   The damages suffered by many individual Class members are relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Mt. Hawley.   Moreover, many of the individual Class members are unlikely to be aware of their rights.   Therefore, it is unlikely that these Class members, on an individual basis, can obtain effective redress for the wrongs done to them.

46.     Additionally, the court system would be adversely affected by such individualized litigation.   Individualized litigation would create the danger of inconsistent contradictory judgments arising from the same set of facts.   Individualized litigation would also increase delay and expense to all parties and the court system from the issues raised by this action.   In contrast, the class-action device provides the benefit of adjudication of these issues in a single proceeding, with economies of scale and comprehensive supervision by a single court.

47.     Plaintiffs and their counsel are aware of no litigation concerning the controversy already begun by or against members of the Classes.   This also indicates that the Class members' interest in individually controlling the prosecution of separate actions is minimal.

48.     Plaintiffs do not anticipate any likely difficulties in the management of this action as a class action.

49.     Mt. Hawley has acted on grounds that apply generally to the Declaratory-Judgment Class, as specified above, so that corresponding declaratory relief is appropriate respecting that Class as a whole.

14

## COUNT I
## DECLARATORY JUDGMENT

Plaintiffs allege as follows against Mt. Hawley, on their own behalf and on behalf of the members of the Declaratory-Judgment Class, pursuant to Federal Rule Civil Procedure 23(b)(2) and 28 U.S.C § 2201:

50.     Plaintiffs reallege Paragraphs 1 through 49 hereof.

51.     There is an actual, substantial, and justiciable controversy between Plaintiffs and the Class members on the one hand, and Mt. Hawley on the other, regarding whether Plaintiffs and the Class members' losses of business income and their extra expenses are covered losses under the coverage forms specified above.

52.     A judgment declaring the rights of Plaintiffs and the Class members will serve a useful purpose in settling and clarifying the legal relations at issue, and will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to this request for a declaratory judgment.

53.     Plaintiffs and the Class members are entitled to a judgment declaring that their losses of business income and their extra expenses are covered losses under the specified coverage forms.

## COUNT II
## BREACH OF CONTRACT

Plaintiffs allege as follows against Mt. Hawley, on their own behalf and on behalf of the members of the Breach-of-Contract Class, pursuant to Federal Rule of Civil Procedure 23(b)(3):

54.     Plaintiffs reallege Paragraphs 1 through 49 hereof.

55.     There are valid contracts of insurance binding Plaintiffs and the Class members on the one hand and Mt. Hawley on the other.

15

56. Plaintiffs and the Class members have performed their obligations under the contracts of insurance. Plaintiffs and the Class members have filed claims with Mt. Hawley for their lost business income.

57. Mt. Hawley has not performed its obligations under the insurance contracts, in that it has denied coverage for Plaintiffs' and the Class members' losses of business income when those losses are covered losses under the coverage forms specified above.

58. Plaintiffs and the Class members have been damaged by Mt. Hawley's denial of coverage, in the amount of their lost business income.

59. Plaintiffs and the Class members are entitled to a judgment against Mt. Hawley in the amount of their lost business income and extra expenses.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs individually, and on behalf of all others similarly situated, ask that the Court:

(a) Certify the Classes proposed herein;

(b) Appoint Plaintiffs as representatives of the Declaratory-Judgment Class and the Breach-of-Contract Class;

(c) Appoint Plaintiffs' counsel as attorneys for the Classes;

(d) Declare the rights of Plaintiffs and the Declaratory-Judgment Class as follows: declare that Plaintiffs' and the Class members' losses of business income and extra expenses are covered losses under the specified coverage forms.

(e) Enter judgment awarding Plaintiffs and the Breach-of-Contract Class members monetary damages for Mt. Hawley's breach of their insurance contracts, in the amount of their lost business income and extra expenses;

(f) Award Plaintiffs and the Breach-of-Contract Class members prejudgment interest and post-judgment interest as provided by law;

(g)    Award Plaintiffs and the Class members a reasonable attorney's fee and the costs of this action; and

(h)    Provide such further relief as may be just and proper.

## JURY DEMAND

Plaintiffs, on behalf of themselves and the members of the Classes, demand a trial by jury on all issues so triable.

Dated:  May 8, 2020

Respectfully submitted,

By: */s/ Richard H. Taylor*_____
RICHARD H. TALYOR (TAYLR8925)

By: */s/ W. Lloyd Copeland*_____
W. LLOYD COPELAND (COPW3831)

By: */s/ Steven A. Martino*_____
STEVEN A. MARTINO (MARS7433)
P.O. Box 894
Mobile, Alabama 36601
Phone: (251) 433-3131
Fax:    (251) 433-4207
Email: richard@taylormartino.com
         lloyd@taylormartino.com
         stevemartino@taylormartino.com

**ATTORNEYS FOR PLAINTIFFS AND THE PROPOSED CLASSES**

**OF COUNSEL:**
John W. "Don" Barrett (pro hac vice application to be filed)
BARRETT LAW GROUP, P.A.
404 Court Square North
Lexington, Mississippi
Phone: (662) 834-9168
Fax:    (662) 834-2628
Email: donbarrettpa@gmail.com

**DEFENDANT TO BE SERVED BY CERTIFIED MAIL:**

Mt. Hawley Insurance Company
c/o Corporation Service Company, Inc.
641 South Lawrence Street
Montgomery, AL 36104