## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| **DRAMA CAMP PRODUCTIONS, INC., AND J&M LLC, D/B/A SHADES, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,** : | |
| : | **C.A. NO.: 1:20-cv-00266-JB-B** |
| *Plaintiffs,* : | |
| **v.** : | |
| : | |
| **MT. HAWLEY INSURANCE CO.,** : | |
| *Defendant.* : | |

## DEFENDANT MT. HAWLEY INSURANCE CO.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ..................................................................................................... 1

II.    SUMMARY OF PLAINTIFFS' ALLEGATIONS ........................................ 6

       A.     PLAINTIFFS' ALLEGATIONS IN THE FIRST AMENDED COMPLAINT ..................... 6

       B.     THE RELEVANT POLICY PROVISIONS ................................................................. 8

III.   APPLICABLE LEGAL STANDARDS ........................................................ 10

       A.     FED. R. CIV. P 12(B)(6) STANDARD ................................................................ 10

       B.     LEGAL STANDARDS FOR INTERPRETATION OF INSURANCE POLICIES ............. 11

IV.    ARGUMENT ....................................................................................................... 12

       A.     PLAINTIFFS ARE NOT ENTITLED TO BUSINESS INCOME OR EXTRA
              EXPENSE COVERAGE AS A MATTER OF LAW .................................................... 12

              1.     Plaintiffs have failed to plead "direct physical loss of or damage
                     to property at [the insured] premises" as a matter of law. ............. 13

              2.     Courts have repeatedly rejected Plaintiffs' theory that mere loss
                     of use of property constitutes "direct physical loss of or damage
                     to property at [the insured] premises." .............................................. 17

       B.     PLAINTIFFS ARE NOT ENTITLED TO CIVIL AUTHORITY COVERAGE ................. 19

              1.     Civil Authority coverage does not apply because the Complaint
                     does not allege that access to Plaintiff's premises, let alone the
                     area surrounding Plaintiff's premises, was prohibited by a civil
                     authority ............................................................................................... 20

              2.     Civil Authority coverage does not apply because the Complaint
                     does not allege that the Order was "in response to" property
                     damage .................................................................................................. 22

       C.     PLAINTIFFS' CLAIMS AS ALLEGED ARE ALSO BARRED BY SEVERAL
              EXCLUSIONS .................................................................................................... 24

       D.     PLAINTIFFS' DECLARATORY JUDGMENT CLAIM SHOULD ALSO BE
              DISMISSED AS DUPLICATIVE OF THE BREACH OF CONTRACT CLAIM AND
              BECAUSE PLAINTIFFS HAVE AN ADEQUATE REMEDY AT LAW ......................... 28

       E.     THE PUTATIVE CLASS CLAIMS MUST BE DISMISSED WHERE PLAINTIFFS'
              INDIVIDUAL CLAIMS FAIL ................................................................................ 29

V.     CONCLUSION .................................................................................................. 29

# TABLE OF AUTHORITIES

Page

**CASES**

*54th St. Ltd. Partners, L.P. v. Fid. & Guar. Ins. Co.*
  763 N.Y.S.2d 243 (N.Y. App. Div. 2003) ................................................................ 21

*730 Bienville Partners, Ltd. v. Assurance Co. of Am.*
  67 F. App'x 248 (5th Cir. 2003) ............................................................................. 21

*Abner, Herrman & Brock, Inc. v. Great N. Ins. Co.*
  308 F. Supp. 2d 331 (S.D.N.Y. Mar. 12, 2004) ...................................................... 21

*AFLAC Inc. v. Chubb & Sons, Inc.*
  581 S.E.2d 317 (Ga. Ct. App. 2003) ...................................................................... 14

*Allstate Ins. Co. v. Hardnett*
  763 So. 2d 963 (Ala. 2000) ..................................................................................... 16

*Am. Dental Assn. v. Cigna Corp.*
  605 F.3d 1283 (11th Cir. 2010) .............................................................................. 11

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) ................................................................................................ 10

*Backroads Corp. v. Great Northern Ins.*
  2005 WL 1866397, *6 (N.D. Cal. 2005) ................................................................ 21

*Bass v. Butler*, 116 F. App'x 376, 385 (3d Cir. 2004)
  116 F. App'x 376, 385 (3d Cir. 2004) .................................................................... 29

*Bell Atlantic Corp. v. Twombly*
  550 U.S. 544 (2007) .......................................................................................... 10, 11

*Bolin v. Story*
  225 F.3d 1234 (11th Cir. 2000) .............................................................................. 28

*By Dev., Inc. v. United Fire & Cas. Co.*
  No. CIV. 04-5116, 2006 WL 694991, *5 (D.S.D. Mar. 14, 2006) .......................... 22

*Cherokee Ins. Co. v. Sanches*
  975 So. 2d 287 (Ala. 2007) ..................................................................................... 11

*Commstop, Inc. v. Travelers Indemn. Co. of Conn.*
  No. cv-11-1257, 2012 WL 1883461 (W.D. La. 2012), at *9 .................................. 21

*Cowart v. GEICO Cas. Co.*
  --- So. 2d ---, No. 1171126, 2019 WL 5485268, at *3 (Ala. Oct. 25, 2019) ..... 16, 19

*Dae Assocs., LLC v. AXA Art Ins. Corp.*
  158 A.D.3d 493, 70 N.Y.S.3d 500 (N.Y. App. Div. 2018) ..................................... 15

*Davila v. Delta Air Lines, Inc.*
  326 F.3d 1183 (11th Cir. 2003) .............................................................................. 11

*Dickie Brennan & Co. v. Lexington Ins. Co.*
  636 F.3d 683 (5th Cir. 2011) ............................................................................ 22, 23

*Great Am. All. Co. v. Bravo Food Serv. LLC*
  No. 7:19-CV-1026-RDP, 2019 WL 6219143, at *2 (N.D. Ala. Nov. 21, 2019) ...... 11

*Harry's Cadillac-Pontiac-GMC Truck Co. v. Motors Ins. Co.*
  126 N.C. App. 698, 486 S.E.2d 249 (N.C. Ct. App. 1997) ................................. 16, 17

*Henley v. Turner Broad. Sys., Inc.*
  267 F. Supp. 3d 1341 (N.D. Ga. 2017) .................................................................. 29

*Ho Bros. Rest. v. Aetna Cas. & Sur. Co.*
  492 So. 2d 603 (Ala. 1986) ..................................................................................... 16

## TABLE OF AUTHORITIES
(continued)

Page

*Hoefling v. City of Miami*
811 F.3d 1271 (11th Cir. 2016) ........................................................................ 11

*HRG Dev. Corp. v. Graphic Arts Mut. Ins. Co.*
527 N.E.2d 1179 (Mass. App. Ct. 1988) ........................................................... 15

*Ira Stier, DDS, P.C. v. Merchants Ins. Grp.*
7 N.Y.S.3d 365 (N.Y. App. Div. 2015) ............................................................. 26

*J. O. Emmerich & Assocs., Inc. v. State Auto Ins. Cos.*
No. 3:06CV00722-DPJ-JCS, 2007 WL 9775576, at *5 (S.D. Miss. Nov. 19, 2007).............. 18

*Johnson Gallagher Magliery, LLC v. Charter Oak Fire Ins. Co.*
No. 13 CIV. 866 DLC, 2014 WL 1041831, at *7 (S.D.N.Y. Mar. 18, 2014) ........................ 27

*Johnson v. Allstate Ins. Co.*
505 So. 2d 362 (Ala. 1987)............................................................................... 12

*Kean, Miller, Hawthorne, D'Armond McCowan & Jarman, LLP v. Nat'l Fire Ins. Co. of
Hartford*
No. CIV. A. 06-770-C, 2007 WL 2489711, at *4 (M.D. La. Aug. 29, 2007) ........................ 22

*Kelaher, Connell & Conner, P.C. v. Auto-Owners Ins. Co.*
No. 4:19-CV-00693-SAL, 2020 WL 886120, at *8 (D.S.C. Feb. 24, 2020)........................... 23

*Kelley v. Royal Globe Ins. Co.*
349 So.2d 561 (Ala. 1977) ................................................................................ 12

*Kivisto v. Miller, Canfield, Paddock & Stone, PLC*
413 F. Appx. 136 (11th Cir. 2011)..................................................................... 11

*Landmark Hosp., LLC v. Cont'l Cas., Co.*
No. CV 01-0691 GLTMLGX, 2002 WL 34404929, at *2 (C.D. Cal. July 2, 2002)............... 27

*Legal Servs. Plan of E. Michigan v. Citizens Ins. Co. of Am.*
No. 278110, 2009 WL 1175514, at *4 (Mich. Ct. App. Apr. 30, 2009)................................ 27

*Mastellone v. Lightning Rod Mut. Ins. Co.*
884 N.E.2d 1130 (Ohio Ct. App. 2008) ............................................................. 14

*MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*
187 Cal. App. 4th 766 (Cal. Ct. App. 2010) .................................................. 13, 15

*Nahmad v. AIG Prop. Cas. Co.*
No. 18-23622-CIV, 2019 WL 7971655, at *3 (S.D. Fla. Apr. 25, 2019)............................... 28

*Nevers v. Aetna Ins. Co.*
546 P.2d 1240 (Wash. Ct. App. 1976)................................................................ 15

*Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*
17 F. Supp. 3d 323 (S.D.N.Y. 2014)............................................................ 14, 17

*Northeast Georgia Heart Ctr., P.C. v. Phoenix Ins. Co.*
No. 2:12-CV-00245-WCO, 2014 WL 12480022, at *6 (N.D. Ga. May 23, 2014) ................ 18

*Paradies Shops, Inc. v. Hartford Fire Ins. Co.*
No. 1:03-CV-3154-JEC, 2004 WL 5704715, at *7 (N.D. Ga. Dec. 15, 2004).................. 21, 23

*Parm v. Nat'l Bank of California, N.A.*
242 F. Supp. 3d 1321 (N.D. Ga. 2017)............................................................... 29

*Pentair, Inc. v. Am. Guarantee & Liab. Ins. Co.*
400 F.3d 613 (8th Cir. 2005) ............................................................................ 18

*Philadelphia Parking Auth. v. Fed. Ins. Co.*
385 F. Supp. 2d 280 (S.D.N.Y. 2005)......................................................... 17, 21

**TABLE OF AUTHORITIES**
(continued)

Page

*Porterfield v. Audubon Indem. Co.*
856 So. 2d 789 (Ala. 2002) ................................................................. 14

*Remedios v. Nat'l Fire & Marine Ins. Co.*
No. 1:19-CV-21559-KMM, 2019 WL 7956170, at *4 (S.D. Fla. Aug. 29, 2019) .................. 28

*Ritterman v. Lexington Ins. Co.*
No. 18-61239-CIV, 2018 WL 7252902, at *2 (S.D. Fla. Dec. 3, 2018) ................................. 28

*Roundabout Theatre Co. v. Cont'l Cas. Co.*
751 N.Y.S.2d 4 (N.Y. App. Div. 2002) ................................................. 17

*Royal Ins. Co. of Am. v. Thomas*
879 So. 2d 1144 (Ala. 2003) ............................................................ 19

*Safeway Ins. Co. of Ala., Inc. v. Herrera*
912 So. 2d 1140 (Ala. 2005) ............................................................ 12

*Schneider Equip., Inc. v. Travelers Indem. Co. of Illinois*
No. CIV. 04-1482-HA, 2006 WL 2850465, at *1, *5-6 (D. Or. Sept. 29, 2006) .................... 24

*Ski Shawnee, Inc. v. Commonwealth Ins. Co.*
No. 3:09-CV-02391, 2010 WL 2696782, at *5 (M.D. Pa. July 6, 2010) .............................. 21

*Social Life Magazine, Inc. v. Sentinel Ins. Co. Ltd.*
No. 20 Civ. 3311 (VEC), tr. at 5 (S.D.N.Y. May 14, 2020) ...................................... 3

*Source Food Tech., Inc. v. U.S. Fid. & Guar. Co.*
465 F.3d 834 (8th Cir. 2006) ........................................................... 18

*South Texas Med. Clinics, P.A. v. CNA Fin. Corp.*
Civ. A. No. H-06-4041, 2008 WL 450012, at *8 (S.D. Tex. Feb. 15, 2008) .................... 22, 23

*Southern Hospitality, Inc. v. Zurich American Ins.*
393 F.3d 1137 (10th Cir. 2004) ...................................................... 20, 21

*St. Paul Fire & Marine Ins. Co. v. Britt*
203 So. 3d 804 (Ala. 2016) ............................................................. 14

*State Farm Mut. Auto. Ins. Co. v. Altamonte Springs Diagnostic Imaging, Inc.*
No. 6:11-CV-1373-ORL-31, 2012 WL 1565387, at *4 (M.D. Fla. May 2, 2012) .................. 29

*Syufy Enters. v. Home Ins. Co. of Ind.*
No. 94-0756 FMS, 1995 WL 129229, *2 (N.D. Cal. Mar. 21, 1995) ............................... 23

*Tate v. Allstate Ins. Co.*
692 So.2d 822 (Ala. 1997) ............................................................. 12

*Thane Hawkins Polar Chevrolet, Inc. v. Truck Ins. Exch.*
No. C6-94-2068, 1995 WL 70152, at *2 (Minn. Ct. App. Feb. 21, 1995) ............................ 15

*Travelers Prop. Cas. Co. of Am. v. Moore*
763 F.3d 1265 (11th Cir. 2014) ........................................................ 11

*Trinity Indus., Inc. v. Ins. Co. of N. Am.*
916 F.2d 267 (5th Cir. 1990) ........................................................... 13

*Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.*
817 So. 2d 68 (Ala. 2001) ............................................................. 12

*Twin City Fire Ins. Co. v. Ohio Cas. Ins. Co.*
480 F.3d 1254 (11th Cir. 2007) ........................................................ 12

*United Air Lines, Inc. v. Ins. Co. of State of Pa.*
439 F.3d 128 (2d Cir. 2006) ........................................................... 23

# TABLE OF AUTHORITIES
(continued)

**Page**

*Universal Image Prods., Inc. v. Chubb Corp.*
   703 F. Supp. 2d 705 (E.D. Mich. 2010).......................................................................... 14, 15
*Worldwide Sorbent Prod., Inc. v. Invensys Sys., Inc.*
   No. 1:13-CV-252, 2014 WL 12597394, at *11 (E.D. Tex. July 31, 2014) ............................. 27

## OTHER AUTHORITIES
10A COUCH ON INSURANCE § 148:46 .................................................................................. 13, 14
Pandemics, 3 CASUALTY INSURANCE CLAIMS § 53:12 (4th ed.) ........................................ 3

## RULES
Fed. R. Civ. P 12(b)(6)............................................................................................................. 10
Fed. R. Civ. P. 10(c) ................................................................................................................. 11

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ALABAMA**

| | |
|---|---|
| **DRAMA CAMP PRODUCTIONS, INC., AND J&M LLC, D/B/A SHADES, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,** : | |
| *Plaintiffs,* : | **C.A. NO.: 1:20-cv-00266-JB-B** |
| **v.** : | |
| **MT. HAWLEY INSURANCE CO.,** : | |
| *Defendant.* : | |

## <u>DEFENDANT MT. HAWLEY INSURANCE CO.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE FIRST AMENDED COMPLAINT</u>

### I.    INTRODUCTION

This putative class action is one of numerous lawsuits that have been filed across the country in recent weeks in which businesses seek to force their property insurers to provide coverage for business income losses arising from the COVID-19 pandemic. While the pandemic has presented unfortunate and challenging circumstances for many individuals and businesses throughout the country (which the U.S. government has sought to address via massive stimulus assistance), the financial losses of businesses nationwide cannot be somehow shifted to private insurers that never undertook to cover such a risk, and never received a premium for it.[1]

---

[1] The National Association of Insurance Commissioners has issued a statement explaining that "[b]usiness interruption policies were generally not designed or priced to provide coverage against communicable diseases, such as COVID-19," insurance is designed for circumstances where "a relatively small number of claims are spread across a broader group" rather than a global pandemic, and "if insurance companies are required to cover such claims, such an action would create substantial solvency risks for the sector, significantly undermine the ability of insurers to pay other types of claims, and potentially exacerbate the negative financial and economic impacts the country is currently experiencing." NAIC Statement on Congressional Action Relating to COVID-19, Mar. 25, 2020 (https://content.naic.org/article/statement_naic_statement_congressional_action_relating_covid_19.htm).
    Recognizing that property insurance policies were not designed to cover business income losses from COVID-19, some state legislatures, such as in Louisiana, have introduced and later abandoned efforts to attempt to force property insurers to provide coverage for business income losses caused by the COVID-19 social distancing requirements imposed by state and local governments. *See, e.g.*, La. Senate Bill No. 477.

Plaintiffs purchased commercial property insurance policies from Defendant Mt. Hawley Insurance Company ("Mt. Hawley" or "Defendant"), a type of insurance that covers direct physical loss of or damage to buildings and business personal property caused by risks such as a fire, windstorm or theft. When purchasing property insurance, a business can choose to add Business Income and Extra Expense coverage. This provides some additional coverage when insured property is damaged by a fire, for example, requiring the business to suspend operations. In that event, certain losses of business income and extra expenses (such as renting a temporary office) occurring during the "period of restoration"—while the property damage is being repaired—would be covered (subject to the policy's terms and conditions). The Business Income and Extra Expense coverage form typically also includes Civil Authority coverage, which extends the business income and extra expense coverage to include certain specific circumstances where property damage caused by a covered cause of loss occurs not to the insured's own property but instead to other property in the surrounding area. Civil Authority coverage, however, is very specific in its scope—it applies only if there is damage to property within a certain distance of the insured property (one mile, in Plaintiffs' policies) and, as a result of that damage, a civil authority prohibits access to the insured premises. Civil Authority coverage applied, for example, to some businesses in lower Manhattan affected by the massive damage to property resulting from the September 11th attacks, when access to their premises was prohibited by government orders as a result of property damage to neighboring properties.

None of the coverage provisions in standard commercial property policies have *any* application to a public health pandemic such as the COVID-19 Pandemic, which poses a threat to individuals' health but does not cause physical loss of or damage to buildings, furniture or

2

inventory.[2] As the first federal judge in the nation to address a COVID-19 property insurance claim put it, COVID-19 "damages lungs," "[i]t doesn't damage printing presses" or other property, and "this is just not what's covered under these insurance policies."[3]

Plaintiff Drama Camp Productions, Inc., a children's drama studio, purchased a property insurance policy from Mt. Hawley that covered its business personal property at one location in Mobile, Alabama, where it rented space, and also provided business income and extra expense coverage. (PageID.363.[4]) Plaintiff J&M LLC, a retail store selling sunglasses and other items, purchased a property insurance policy for its 11 different locations in five different states. The policy covered its business personal property, tenants' improvements and betterments, and also provided business income (and extra expense) coverage, with separate limits for each location. (PageID.252-256.) The Business Income and Extra Expense provisions in Plaintiffs' policies (the "Policies"), which are the focus of Plaintiffs' First Amended Class Action Complaint (the "Complaint"), provide coverage only when there is: (1) "direct physical loss of or damage to property" at the insured premises; (2) the loss or damage is caused by or results from a Covered Cause of Loss; and (3) the "direct physical loss of or damage to property" causes a necessary suspension of business operations at the insured premises. Plaintiffs cannot satisfy a single one of these three essential requirements of the insuring agreement. Plaintiffs rely entirely on government orders mandating closure of their business premises only to non-employees, for "social distancing" purposes. PageID.229-230, ¶ 27. Plaintiffs do not claim that there was any physical damage to

---

[2] Pandemic insurance was available in the insurance marketplace prior to COVID-19, but rarely purchased. *See* Pandemics, 3 CASUALTY INSURANCE CLAIMS § 53:12 (4th ed.) (noting the availability of "pandemic insurance coverage . . . under which coverage is triggered by a World Health Organization alert level of three or higher," which has been available since at least 2008-09); "Wimbledon's pandemic insurance coverage results in $141M payout," Property Casualty 360 (April 10, 2020) ("tennis tournament is set to receive around $141 million after paying for pandemic insurance coverage for nearly 20 years").

[3] *Social Life Magazine, Inc. v. Sentinel Ins. Co. Ltd.*, No. 20 Civ. 3311 (VEC), tr. at 5, 15 (S.D.N.Y. May 14, 2020) (Ex. A hereto).

[4] The Policies, exhibits to the Complaint, are cited herein by reference to the CM/ECF PageID number.

their property, or any physical loss of their property. Their property remains in the same state it was in before COVID-19 arrived in Alabama. The only thing that needs to happen for Plaintiffs to reopen their businesses—which has occurred for J&M—is for a government official to lift social distancing requirements.

As explained below, courts have held that "direct physical loss of or damage to property," outside the context of a theft (which is by its very nature a direct physical loss), requires a demonstrable, tangible change in the insured property, consistent with the ordinary meaning of the word "physical." Courts have consistently rejected insureds' arguments that a defect in title, for example, or a temporary inability to access property that is physically unharmed, constitutes "direct physical loss of or damage to property." Plaintiffs' theory of their case, as alleged, is that the temporary and partial "loss of use" of their premises by government order, where there was no physical impact on their properties whatsoever, somehow constitutes a "direct physical loss of or damage to property at [the insured] premises." Courts have repeatedly rejected similar arguments. No court has *ever* held that a temporary restriction on access to property as a result of a government order is a "direct physical loss of or damage to property." This is not surprising as Plaintiffs' position is contrary to the plain language and ordinary meaning of those words, and contrary to the structure and plain meaning of the Policies when read as a whole. If a mere "loss of use" unaccompanied by any physical impact on the insured property could give rise to Business Income coverage, the Civil Authority coverage would be entirely superfluous, as explained below.

It is most revealing that the Complaint completely ignores the Civil Authority provision, despite the fact that it was specifically addressed in the letters issued by Mt. Hawley denying Plaintiffs' insurance claims (PageID.438-442, PageID.444-450.) The Civil Authority provision, which is an "Additional Coverage" in the Business Income (And Extra Expense) Coverage Form,

is where the Policies specifically define the limited circumstances under which there could be coverage for a loss of business income resulting from a government order prohibiting access to the insured premises. This coverage applies where:  (1) there is damage by a covered cause of loss to property other than property at the insured premises, within one mile of the insured premises; (2) as a result of the damage, a civil authority prohibits access to the insured property; and (3) the civil authority action is in response to the damage or designed to allow the civil authority to have unimpeded access to the damaged property. Plaintiffs do not and cannot plead *any* of the facts that would be required for Civil Authority coverage to apply. Courts have uniformly held that Civil Authority coverage applies only where a civil authority completely prevents access to the insured's premises. There is no such prohibition here because Plaintiffs' employees have been free to access the premises at any time. Plaintiffs also cannot satisfy any of the other elements required for Civil Authority coverage, including a prohibition of access to the area surrounding the insured premises, or that the civil authority order was the "result of" and "in response to" damage to non-insured property by a covered cause of loss.

The Civil Authority provision further demonstrates why Plaintiff's interpretation of the Business Income and Extra Expense provision is incorrect. There would be no reason for Civil Authority coverage, with its specific requirements, if any government order prohibiting (or, here, limiting) access to premises constituted "direct physical loss of or damage to property," and thereby gave rise to Business Income and Extra Expense coverage, as Plaintiffs contend.

Even if Plaintiffs could somehow satisfy their burden of establishing coverage under the insuring agreement on their alleged claims for Business Income or Extra Expense coverage (which they cannot), Plaintiffs' theory still would fail because the Policies contain several exclusions for "loss or damage caused by or resulting from . . . loss of use or loss of market," "loss or damage

caused directly or indirectly by . . . [t]he enforcement of any ordinance or law . . . [r]egulating the . . . use . . . of any property," and loss caused by "[a]cts or decisions . . . of any . . . governmental body." These exclusions further defeat Plaintiffs' argument that a temporary restriction on the use of property as a result of a government order creates a basis for coverage.

Plaintiffs' failure to plead a covered loss under the Policies requires dismissal of both of Plaintiffs' causes of action: Count I (declaratory judgment) and Count II (breach of contract). Count I should also be dismissed for the independent reason that Plaintiffs have an adequate legal remedy and the declaratory relief sought is duplicative of the breach of contract claim. With no viable individual claim of their own, Plaintiffs obviously cannot proceed on behalf of a proposed class. The Complaint should therefore be dismissed, in its entirety, and with prejudice.

## II.    SUMMARY OF PLAINTIFFS' ALLEGATIONS

### A.   PLAINTIFFS' ALLEGATIONS IN THE FIRST AMENDED COMPLAINT

Drama Camp alleges that it "owns and operates a children's drama studio in Mobile, Alabama." PageID.224, ¶ 6. J&M alleges that it "owns and operates several retail stores in Alabama . . . where it sells sunglasses and sportswear," and "is headquartered in Orange Beach, Alabama." PageID.224, ¶ 7.[5] Mt. Hawley issued commercial property insurance policies (the "Policies") to Drama Camp and J&M, which are attached as exhibits to the First Amended Complaint. PageID.224, ¶¶ 8–9, 11–12 and Exs. A & B thereto (Docs. 5-1 and 5-2).

Plaintiffs allege that "on March 13, 2020, Kay Ivey, Governor of the State of Alabama, declared the COVID-19 pandemic a State Public Health Emergency," further directing "the appropriate state agencies to exercise their statutory and regulatory authority accordingly," and, "[o]n March 27, 2020, Dr. Scott Harris, the Alabama State Health Officer, entered a Statewide

---

[5] J&M's Policy includes a total of 11 insured locations in five states (Alabama, Mississippi, Florida, Louisiana and Tennessee). (Doc. 5-1, at pp. 13–17 of 106.)

Order which provided . . . that effective March 28, 2020, at 5:00 PM, certain 'non-essential' businesses would be closed to non-employees," which Plaintiffs claim included their businesses. PageID.229, ¶ 26–27 and Ex. C thereto (Doc. 5-3). The reasons stated for Dr. Harris' order (the "Order") were that "the appearance of COVID-19 in [Alabama] poses the *potential* of widespread exposure to an infectious agent that poses significant risk of substantial harm to a large number of people," and "further social distancing measures are necessary to be implemented on a statewide basis to *prevent* the spread of COVID-19." PageID.415 (emphasis added). Plaintiffs further allege that, on or about April 30, 2020, J&M was permitted to and did reopen its retail locations in Alabama at up to fifty percent (50%) capacity, but Drama Camp remained closed. PageID.230, ¶ 28.

Plaintiffs made claims with Mt. Hawley for their business income and extra expense losses arising from the Order. PageID.230, ¶ 30. Mt. Hawley denied their claims, in part, "because . . . '[Plaintiffs] have not sustained direct physical loss of or damage to any property that would trigger [their] business income coverage.'" PageID.230, ¶ 31, Exs. F & G thereto.

Plaintiffs maintain that they "sustain[ed] direct physical loss of covered property, their business premises, because the State Health Officer issued orders that shut their businesses down," and "because their business premises were rendered physically unusable for their intended purposes." PageID.230, ¶ 32. Plaintiffs assert that "the orders were the direct cause of Plaintiffs' loss of the use of their business premises." PageID.230-231, ¶ 32. However, conspicuously absent from Plaintiffs' complaint is any allegation of any physical impact on their property that could constitute "direct physical loss of or damage to property." Rather, Plaintiffs only seek compensation for intangible, financial, losses. Plaintiffs further maintain that the exclusions cited by Mt. Hawley in its letters declining coverage are inapplicable. PageID.231-232, ¶¶ 34–36.

The Complaint alleges two counts. Count I seeks a declaratory judgment that Plaintiffs and putative class members' "losses of business income and any extra expenses are covered losses under the specified coverage forms." PageID.236, ¶ 55. Count II alleges a claim for breach of contract, for failure to pay claims for loss of business income and extra expense. PageID.237, ¶¶ 59–61.

Plaintiffs seek to bring their claims on behalf of a proposed class defined (with certain minor exceptions) as "[a]ll businesses in the State of Alabama that were issued policies by Mt. Hawley [including certain specified policy forms], whose policies were in effect on and after March 27, 2020, which businesses had their on-premises business operations shut down to the public or restricted by the Alabama State Health Officer's Order of March 27, 2020," and which made claims with Mt. Hawley that were denied. PageID.232-233, ¶ 40.

## B.  THE RELEVANT POLICY PROVISIONS

As Plaintiffs allege, the Policies plainly provide that Mt. Hawley will:

> pay for *direct physical loss of or damage to Covered Property* at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

PageID.225, ¶ 14 (emphasis added).  The Policies define a "Covered Cause of Loss" as "Risks of Direct Physical Loss unless the loss is" either "excluded" or "limited" elsewhere in the Policies. PageID.226, ¶ 19.  Plaintiffs do not allege, or even remotely suggest, that there has been any physical damage to Covered Property at any of their premises, or anything that could reasonably be construed as a "physical loss" of Covered Property.

Plaintiffs also elected to purchase Business Income coverage, which also requires direct physical loss of or damage to property at the insured premises, as follows:

> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the

> "period of restoration". The "suspension" ***must be caused by direct physical loss of or damage to property at premises which are described in the Declarations*** . . . ***The loss or damage must be caused by or result from a Covered Cause of Loss.***

PageID.226, ¶ 17 (emphasis added). Plaintiffs also seek Extra Expense coverage, which is defined as "necessary expenses you incur during the 'period of restoration' that you would not have incurred if there had been no ***direct physical loss or damage to property*** caused by or resulting from a Covered Cause of Loss." PageID.226, ¶ 18 (emphasis added).

The Policies also include Civil Authority coverage, which also provides Business Income and Extra Expense coverage, in certain specific circumstances:

> ***When a Covered Cause of Loss causes damage to property other than property at the described premises***, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that ***prohibits access*** to the described premises, provided that both of the following apply:
>
> **(1)** ***Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage***, and the described premises are within that area but are not more than one mile from the damaged property; and
> **(2)** The action of civil authority is taken in response to dangerous physical conditions ***resulting from the damage or continuation of the Covered Cause of Loss that caused the damage***, or the action is taken to enable a civil authority to have unimpeded access to the ***damaged property***.

PageID.275, 381 (emphasis added). The Complaint makes no reference whatsoever to this provision, despite the fact that this is the provision that actually sets forth the limited, circumstances under which the Policies provide coverage for government orders prohibiting access to insured premises.

The Civil Authority provision makes clear that a business income or extra expense loss resulting from a prohibition of access due to a government order is covered only as set forth in that provision. Consistent with that, the Policies also include specific exclusions that preclude any attempts to circumvent the requirements of the Civil Authority provision, or those of any other

insuring agreement. One of these exclusions is the Ordinance or Law exclusion, which states, in

relevant part:

> We will not pay for loss or damage caused directly or indirectly by
> any of the following. Such loss or damage is excluded regardless of
> any other cause or event that contributes concurrently or in any
> sequence to the loss.
>
> **a. Ordinance Or Law**
>
> The enforcement of any ordinance or law:
> (1) Regulating the . . . use . . . of any property;
> . . .
> This exclusion, Ordinance Or Law, applies whether the loss results
> from:
> (a) An ordinance or law that is enforced even if the property has not
> been damaged[.]

PageID.227-228, ¶ 22.

The Policies also include an exclusion providing that "[w]e will not pay for loss or damage

caused by or resulting from . . . loss of use or loss of market . . . ." PageID.226-227, ¶ 21.  The

Policies also include an acts or decisions exclusion, stating that "[w]e will not pay for loss or

damage caused by or resulting from . . . [a]cts or decisions, including the failure to act or decide,

of any person, group, organization or governmental body." PageID.226-227, ¶ 21.

## III.   APPLICABLE LEGAL STANDARDS

### A.   FED. R. CIV. P 12(B)(6) STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain

sufficient factual matter, which, if accepted as true, "state[s] a claim to relief that is plausible on

its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible "when

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. Appx. 136, 138 (11th Cir. 2011) (unpublished) (quoting *Am. Dental Assn. v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). "[C]onclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir.2003). "If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed." *Great Am. All. Co. v. Bravo Food Serv. LLC*, No. 7:19-CV-1026-RDP, 2019 WL 6219143, at *2 (N.D. Ala. Nov. 21, 2019) (citing *Twombly*, 550 U.S. at 570).

Exhibits to a complaint are "part of the pleading for all purposes," Fed. R. Civ. P. 10(c), and properly considered in ruling on a motion to dismiss under Rule 12(b)(6). *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) ("A district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss, and if the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls.").

### B.  LEGAL STANDARDS FOR INTERPRETATION OF INSURANCE POLICIES

This Court, sitting in diversity jurisdiction, applies Alabama's choice of law rules. *Travelers Prop. Cas. Co. of Am. v. Moore*, 763 F.3d 1265, 1270 (11th Cir. 2014). Alabama applies the *lex loci contractus* rule to insurance contracts, focusing on where the policy was "issued and delivered . . . ." *Cherokee Ins. Co. v. Sanches*, 975 So. 2d 287, 293 (Ala. 2007). For purposes of this motion only, Mt. Hawley concedes that Alabama law applies.

"In Alabama, the interpretation of a contract, including an insurance contract, is a question of law." *Twin City Fire Ins. Co. v. Ohio Cas. Ins. Co.*, 480 F.3d 1254, 1258 (11th Cir. 2007). Alabama courts "enforce the insurance policy as written if the terms are unambiguous." *Safeway Ins. Co. of Ala., Inc. v. Herrera*, 912 So. 2d 1140, 1143 (Ala. 2005); *see also Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.*, 817 So. 2d 687, 691 (Ala. 2001) ("Insurance companies are entitled to have their policy contract enforced as written."). "The fact that the parties interpret the insurance policy differently does not make the insurance policy ambiguous." *Twin City Fire Ins. Co.*, 817 So. 2d at 692 (citing *Tate v. Allstate Ins. Co.*, 692 So.2d 822 (Ala. 1997)).  Alabama courts give policy terms the meaning that "a reasonably prudent person applying for insurance would have understood the term[s] to mean." *Herrera*, 912 So. 2d at 1144 (internal quotation marks omitted). Importantly, "ambiguities are not to be inserted by strained or twisted reasoning." *Twin City Fire Ins. Co.*, 817 So. 2d at 692 (citing *Kelley v. Royal Globe Ins. Co.*, 349 So.2d 561 (Ala. 1977)). Courts must remain careful not "to rewrite policies to provide coverage not intended by the parties." *Johnson v. Allstate Ins. Co.*, 505 So. 2d 362, 365 (Ala. 1987).

## IV.   ARGUMENT

Plaintiffs' claims for declaratory judgment (Count I) and breach of contract (Count II) both fail to state a claim because, on the facts alleged, Plaintiffs fail to state a claim under any applicable provision of the Policies, including Business Income, Extra Expense or Civil Authority. The declaratory judgment claim also fails because it is duplicative of the breach of contract claim, and because Plaintiffs have an adequate remedy at law.

### A.   PLAINTIFFS ARE NOT ENTITLED TO BUSINESS INCOME OR EXTRA EXPENSE COVERAGE AS A MATTER OF LAW

Plaintiffs' claims against Mt. Hawley fail to state a plausible claim for Business Income or Extra Expense coverage because they fail to identify any "direct physical loss of or damage to

property" at Drama Camp or J&M's premises. The Policies provide coverage for "actual loss of Business Income . . . due to the necessary 'suspension' of your 'operations'" only if (1) the suspension is "caused by direct physical loss of or damage to property" at the insured premises, and (2) the "direct physical loss of or damage to property" is "caused by or result[s] from a Covered Cause of Loss." PageID.274, 380. Similarly, the Extra Expense coverage applies only to "necessary expenses you incur during the 'period of restoration' that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss." *Id.* Here, Plaintiffs' claims fail both because: (1) they fail to plead any "direct physical loss of or damage to property at [Plaintiffs'] premises" as a matter of law; and (2) even if Plaintiffs could satisfy the insuring agreement, any claimed loss caused by Dr. Harris' Order would be excluded by several exclusions.

    1.    **Plaintiffs have failed to plead "direct physical loss of or damage to property at [the insured] premises" as a matter of law.**

While Alabama's supreme and appellate courts have not yet addressed the meaning of "direct physical loss of or damage to property," a strong majority of courts nationwide have repeatedly and consistently held that "[t]he language 'physical loss or damage' strongly implies that there was an initial satisfactory state that was changed by some external event into an unsatisfactory state—for example, the car was undamaged before the collision dented the bumper." *Trinity Indus., Inc. v. Ins. Co. of N. Am.*, 916 F.2d 267, 270–71 (5th Cir. 1990). "That the loss needs to be 'physical,' given the ordinary meaning of the term, is '***widely held to exclude alleged losses that are intangible or incorporeal***, and, thereby, to preclude any claim against the property insurer when the insured merely suffers a ***detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property***.'" *MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766, 779 (Cal. Ct. App. 2010) (quoting 10A

COUCH ON INSURANCE § 148:46, pp. 148-81) (emphasis added). In other words, "[f]or there to be a 'loss' within the meaning of the policy, some *external force* must have acted upon the insured property to cause a *physical change* in the condition of the property, i.e., it must have been 'damaged' within the common understanding of that term." *Id.* at 780. Courts have defined the word "physical" as "something which has a 'material existence: perceptible especially through the senses and subject to the laws of nature.'" *Universal Image Prods., Inc. v. Chubb Corp.*, 703 F. Supp. 2d 705, 709 (E.D. Mich. 2010) (quoting *Merriam-Webster* dictionary), *aff'd*, 475 F. App'x 569 (6th Cir. 2012). The Alabama Supreme Court is likely to follow *MRI Healthcare*, among other decisions, because it has consistently looked to COUCH ON INSURANCE as an authority on insurance coverage issues.  *See St. Paul Fire & Marine Ins. Co. v. Britt*, 203 So. 3d 804, 810 (Ala. 2016) (citing COUCH); *Porterfield v. Audubon Indem. Co.*, 856 So. 2d 789, 796 (Ala. 2002) (same).

As the Georgia Court of Appeals further explained in interpreting "direct physical loss of or damage to property" at insured premises, the "common meaning of the words and the policies as a whole, indicate that it contemplates an *actual change in insured property* then in a satisfactory state, *occasioned by accident or other fortuitous event directly upon the property* causing it to become unsatisfactory for future use or requiring that repairs be made to make it so." *AFLAC Inc. v. Chubb & Sons, Inc.*, 581 S.E.2d 317, 319 (Ga. Ct. App. 2003) (emphasis added); *see also Mastellone v. Lightning Rod Mut. Ins. Co.*, 884 N.E.2d 1130, 1143 (Ohio Ct. App. 2008) (adopting COUCH ON INSURANCE definition of "direct physical loss"); *Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323, 331 (S.D.N.Y. 2014) ("The critical policy language here—'direct physical loss or damage'—similarly, and *unambiguously, requires some form of actual, physical damage to the insured premises to trigger loss of business income . . .* coverage," and, critically, the insured "simply cannot show any such loss or damage to [its] Building")

14

(emphasis added); *Universal Image Prods.,* 703 F. Supp. 2d at 710 (finding there was no "direct physical loss" so as to trigger the subject policy's business interruption coverage because "[the insured] has not shown that it suffered any structural or any other tangible damage to the insured property" and, although the insured argued that the presence of bacteria "rendered the insured premises useless," the court held that "even physical damage that occurs at the molecular or microscopic level must be 'distinct and demonstrable'").

Consistent with this long line of authority, the temporary restriction on access to Plaintiffs' properties by non-employees is not "direct physical loss of or damage to property at [Plaintiffs'] premises." None of the property at Plaintiffs' premises has been lost or damaged. What Plaintiffs claim was simply "a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property," and there was no "physical change in the condition of the property . . . ." *MRI Healthcare*, 187 Cal. App. 4th at 779.[6] Courts have repeatedly held, for example, that a defect in title to property which has the legal effect of depriving the insured of the property, is not a tangible, "physical loss," and therefore not covered by property insurance policies. *See Dae Assocs., LLC v. AXA Art Ins. Corp.*, 158 A.D.3d 493, 494, 70 N.Y.S.3d 500, 501 (N.Y. App. Div. 2018); *HRG Dev. Corp. v. Graphic Arts Mut. Ins. Co.*, 527 N.E.2d 1179, 1180 (Mass. App. Ct. 1988); *Nevers v. Aetna Ins. Co.*, 546 P.2d 1240, 1241 (Wash. Ct. App. 1976); *Thane Hawkins Polar Chevrolet, Inc. v. Truck Ins. Exch.*, No. C6-94-2068, 1995 WL 70152, at *2 (Minn. Ct. App. Feb. 21, 1995) (unpublished). Here, what Plaintiffs allege is considerably less than a defect in title—i.e., that the Order imposed a temporary restriction on the use of their business premises by requiring that the premises be "closed to non-employees." PageID.229, ¶ 27.

---

[6] Although the COVID-19 virus does not cause any physical damage to property, Plaintiffs do not even allege that the virus has been in either of their properties. Instead, Plaintiffs premise their claims entirely on the Order, and their claim of temporary, partial "loss of use."

But a restriction on the use of Plaintiffs' premises is not "direct physical loss of or damage to property at [Plaintiffs'] premises."

In *Harry's Cadillac-Pontiac-GMC Truck Co. v. Motors Ins. Co.*, for example, a snowstorm rendered the plaintiff's car dealership inaccessible for a week, but there was no physical damage to the building that would necessitate a suspension of operations. 126 N.C. App. 698, 486 S.E.2d 249, 250 (N.C. Ct. App. 1997). The North Carolina Court of Appeals held that "[t]he business interruption clause does not cover all business interruption losses, but only those losses *requiring repair, rebuilding, or replacement*," and "Plaintiff neither alleged nor offered proof that its lost business income was due to damage to or the destruction of the property, rather all the evidence shows that the loss was proximately caused by plaintiff's *inability to access* the dealership due to the snowstorm." *Id.* at 251 (emphasis added). Here, what Plaintiffs allege is not even an inability to access—non-employees were ordered not to visit Plaintiffs' premises but employees could.

It is also significant here that the Policies issued to Plaintiffs only provide coverage for Business Income or Extra Expense losses during the "period of restoration," which is defined, in pertinent part, as beginning "72 hours after the time of *direct physical loss or damage*" and ending on "the earlier of . . . [t]he date when the property at the described premises should be *repaired, rebuilt or replaced* with reasonable speed and similar quality[.]" PageID.282, 388 (emphasis added). Alabama law requires that the "insurance policy must be read as a whole," and mandates that "provisions of the policy cannot be read in isolation, . . . each provision must be read in context with all other provisions." *Cowart v. GEICO Cas. Co.*, --- So. 2d ---, No. 1171126, 2019 WL 5485268, at *3 (Ala. Oct. 25, 2019) (quoting *Ho Bros. Rest. v. Aetna Cas. & Sur. Co.*, 492 So. 2d 603, 605 (Ala. 1986); *Allstate Ins. Co. v. Hardnett*, 763 So. 2d 963, 965 (Ala. 2000)). Courts have repeatedly looked to the definition of "period of restoration" in concluding that "direct physical

loss of or damage to property" requires repairable or replaceable loss or damage. *See Newman Myers*, 17 F. Supp. 3d at 332 ("The words 'repair' and 'replace' [in the policy's definition of 'period of restoration'] contemplate physical damage to the insured premises as opposed to loss of use of it"); *Philadelphia Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280, 287 (S.D.N.Y. 2005) ("'Rebuild,' 'repair' and 'replace' all strongly suggest that the damage contemplated by the Policy is physical in nature."); *Harry's Cadillac*, 486 S.E.2d at 251 (reaching same conclusion); *Roundabout Theatre Co. v. Cont'l Cas. Co.*, 751 N.Y.S.2d 4, 8 (N.Y. App. Div. 2002) (reaching similar conclusion). Here, Plaintiffs' claimed loss cannot be "repaired, rebuilt or replaced." As Plaintiffs' allegations acknowledge, the only thing that needs to happen for their loss to end is not for any repairs or replacement to be made, but merely for Dr. Harris or another government official to declare that "social distancing" is no longer necessary to the same extent and allow customers or clients to resume visiting Plaintiffs' premises. For J&M that has already occurred, albeit limited to allowing 50% of the capacity—assuming there is such high demand for J&M's wares that they would actually exceed 50% capacity at one time. PageID.230, ¶ 28.

> ### 2. Courts have repeatedly rejected Plaintiffs' theory that mere loss of use of property constitutes "direct physical loss of or damage to property at [the insured] premises."

Plaintiffs' erroneous theory of coverage is that the Orders restricting the use of their premises to employees somehow constituted "direct physical loss of or damage to property at [Plaintiffs'] premises" by rendering Plaintiffs' premises "physically unusable for their intended purposes," constituting a "loss of the use of their business premises." PageID.230, ¶ 32. Contrary to Plaintiffs' allegations, the Policies actually insure the "property" *at the premises*, not the usability of the premises. Nothing happened to the "property at [Plaintiffs'] premises." The property was neither physically lost nor physically damaged.

Courts have repeatedly rejected Plaintiffs' fundamentally flawed approach. In *Pentair, Inc. v. Am. Guarantee & Liab. Ins. Co.*, 400 F.3d 613 (8th Cir. 2005), for example, the insured argued that a loss of electrical power constituted "direct physical loss or damage." *Id.* at 616. The Eighth Circuit, applying Minnesota law, rejected this argument, explaining that "[o]nce physical loss or damage is established, loss of use or function is certainly relevant in determining the amount of loss," but "direct physical loss or damage" was not "established *whenever* property cannot be used for its intended purpose." *Id.*

In another case, the Eighth Circuit addressed a claim in which the United States Department of Agriculture prohibited importation of certain beef products from Canada due to "mad cow disease." *Source Food Tech., Inc. v. U.S. Fid. & Guar. Co.*, 465 F.3d 834, 835 (8th Cir. 2006). The insured relied upon a supplier in Canada, and the court assumed that certain product located in Canada was owned by the insured at the time that its importation was prohibited by the U.S. government. *Id.* The insured argued that the closure of the border constituted "direct physical loss" to the product but conceded that the product "was not physically damaged or contaminated in any manner." *Id.* at 836–37. Applying its prior decision in *Pentair*, the Eighth Circuit held (under Minnesota law) that "[t]o characterize Source Food's inability to transport its truckload of beef product across the border and sell the beef product in the United States as direct physical loss to property would render the word 'physical' meaningless." *Id.* at 838; *see also Northeast Georgia Heart Ctr., P.C. v. Phoenix Ins. Co.*, No. 2:12-CV-00245-WCO, 2014 WL 12480022, at *6 (N.D. Ga. May 23, 2014) ("The court will not expand 'direct physical loss' to include loss-of-use damages when the property has not been physically impacted in some way. To do so would be equivalent to erasing the words 'direct' and 'physical' from the policy."); *J. O. Emmerich & Assocs., Inc. v. State Auto Ins. Cos.*, No. 3:06CV00722-DPJ-JCS, 2007 WL 9775576, at *5 (S.D.

Miss. Nov. 19, 2007) (where insured lost access to computer data during power outage, this was not "direct physical loss of or damage to" property).

Moreover, the Policies must be read as a whole, *Cowart*, 2019 WL 5485268, at *3, and Plaintiffs' position would render the Civil Authority provision, which is discussed further below, superfluous. If, as Plaintiffs contend, a governmental order restricting access to the insured premises to the insured's employees were to constitute "direct physical loss of or damage to property at [Plaintiffs] premises," the Civil Authority provision, which is an "Additional Coverage" that extends the scope of the Business Income and Extra Expense coverages, would serve no purpose. If Plaintiffs' completely illogical position were adopted, any "action of civil authority that prohibits access to the described premises" within the meaning of the Civil Authority provision (PageID.275) would constitute "direct physical loss of or damage to property at [the insured] premises," thereby triggering the Business Income and Extra Expense coverages. Thus, there would be no reason for the Policies to include the "Additional Coverage" for Civil Authority, which is limited to a maximum period of four consecutive weeks (as opposed to Business Income coverage, which does not contain such a limitation). *Id.* Under Alabama law, insurance policies must be construed as a whole, "and a construction which neutralizes any provision of a contract should never be adopted if the contract can be so construed as to give effect to all the provisions." *Royal Ins. Co. of Am. v. Thomas*, 879 So. 2d 1144, 1154 (Ala. 2003). Plaintiff's position that Business Income coverage applies to a governmental order prohibiting access to the insured premises contravenes this basic principle of insurance policy interpretation and must be rejected.

## B. PLAINTIFFS ARE NOT ENTITLED TO CIVIL AUTHORITY COVERAGE

Tellingly, the Complaint, in seeking coverage for Business Income and Extra Expense losses, does not quote from or even mention the Civil Authority provision. As noted above, this is

the section of the Policy that actually addresses the central issue presented by the Complaint. It is very clear that the type of event for which Plaintiffs seek coverage—a governmental order limiting access to their business premises—is an event for which coverage would potentially be found, if at all, in the Civil Authority provision. Because Plaintiffs cannot satisfy the specific requirements for coverage under this provision, their claims fail.

The Civil Authority coverage is inapplicable here for at least two reasons: (1) the Complaint does not allege that access to Plaintiff's premises, let alone the area surrounding Plaintiff's premises, was prohibited by a civil authority; and (2) the Complaint does not allege that the Order was the result of any property damage, let alone damage to non-insured property within one mile of the Plaintiffs' premises caused by a Covered Cause of Loss.

> **1.      Civil Authority coverage does not apply because the Complaint does not allege that access to Plaintiff's premises, let alone the area surrounding Plaintiff's premises, was prohibited by a civil authority.**

The Complaint's allegations fail to satisfy the requirements for Civil Authority coverage that: (a) there is "action of civil authority that prohibits access to the described premises"; and (b) "[a]ccess to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property." PageID.275, 381. Courts interpreting civil authority provisions uniformly hold that to "prohibit" access means to "formally forbid" or "prevent" any access. *See, e.g.*, *Southern Hospitality, Inc. v. Zurich American Ins.*, 393 F.3d 1137, 1140 (10th Cir. 2004). Several civil authority coverage cases were decided after the September 11, 2001 terrorist attacks, which caused massive damage to property in a portion of lower Manhattan and some damage at the Pentagon, but not elsewhere. Policyholders located in other jurisdictions many miles from New York City attempted to obtain civil authority coverage, and courts upheld insurers'

denial of such claims. For example, courts uniformly rejected attempts by hotels, airport parking garages, and even airport gift shops to claim coverage for losses incurred as a result of the FAA orders because they did not "prohibit access" as required by the policy language. *See Southern Hospitality*, 393 F.3d at 1140 ("The FAA order prohibited access to airplane flights; it did not prohibit access to hotel operations."); *730 Bienville Partners, Ltd. v. Assurance Co. of Am.*, 67 F. App'x 248 (5th Cir. 2003) (unpublished) ("The generally prevailing meaning of 'prohibit' is . . . 'to forbid by authority or command,'" and "[i]t is undisputed that the FAA did not forbid any person to access the [insured's] hotels" after the September 11th attacks); *Philadelphia Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280, 289 (S.D.N.Y. 2005) (While the order "may have temporarily obviated the need for Plaintiff's parking services, it did not prohibit access to Plaintiff's garages and therefore cannot be used to invoke coverage[.]"); *Backroads Corp. v. Great Northern Ins.*, 2005 WL 1866397, *6 (N.D. Cal. 2005) (similar); *Paradies Shops, Inc. v. Hartford Fire Ins. Co.*, No. 1:03-CV-3154-JEC, 2004 WL 5704715, at *7 (N.D. Ga. Dec. 15, 2004) ("The Court sees no reasonable means of construing [the] order to ground all aircraft as an order specifically forbidding access to plaintiff's premises" in airport terminal stores.). Likewise, while post-September 11th orders closing lower Manhattan businesses in the days following the attacks "prohibited access" to businesses, subsequent "vehicular traffic restrictions" were insufficient to trigger coverage even though they "restrain[ed] . . . normal operating procedures" for businesses. *Abner, Herrman & Brock, Inc. v. Great N. Ins. Co.*, 308 F. Supp. 2d 331, 335-36 (S.D.N.Y. Mar. 12, 2004); *see also 54th St. Ltd. Partners, L.P. v. Fid. & Guar. Ins. Co.*, 763 N.Y.S.2d 243, 244 (N.Y. App. Div. 2003).[7]

---

[7] Courts uniformly hold that to "prohibit" access within the meaning of a civil authority provision requires that an order "completely prohibit[] access"—not "merely hinder[] access"—to implicate coverage. *Ski Shawnee, Inc. v. Commonwealth Ins. Co.*, No. 3:09-CV-02391, 2010 WL 2696782, at *5 (M.D. Pa. July 6, 2010); *see also Commstop, Inc. v. Travelers Indemn. Co. of Conn.*, No. cv-11-1257, 2012 WL 1883461 (W.D. La. 2012), at *9 (coverage only

Here, Plaintiffs allege only that the Order required their businesses to be "closed to non-employees." PageID.229-230, ¶ 27. Plaintiffs completely fail to allege that there was any complete prevention of access to Plaintiff's premises, let alone that "[a]ccess to the area immediately surrounding the damaged property," including the insured premises, was "prohibited by civil authority," as required for Civil Authority coverage to be provided. PageID.275, 381. Plaintiffs' allegations admit, and the Order reflects, that there was nothing prohibiting Plaintiffs' employees from visiting their premises or the surrounding area. *See* PageID.413-419, 420-427, 428-436. Without a prohibition of access to Plaintiffs' premises and the surrounding area, there is no Civil Authority coverage under the plain language of the Policies.

> **2.     Civil Authority coverage does not apply because the Complaint does not allege that the Order was "in response to" property damage.**

Plaintiffs' allegations also fail to satisfy the Policies' requirement that the civil authority order result "[w]hen a Covered Cause of Loss causes damage to property other than property at the described premises," with the prohibition of access by a civil authority being "a result of the damage . . . ." PageID.275, 381. The Policies further require that "[t]he action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property." *Id.* Courts have consistently held that similar Civil Authority provisions require "proof of a *causal link* between prior damage and civil authority action." *Dickie Brennan & Co. v. Lexington Ins. Co.*, 636 F.3d 683, 687 (5th Cir. 2011) (emphasis added); *see also South Texas Med. Clinics, P.A. v. CNA Fin. Corp.*, Civ. A. No. H-06-4041, 2008

---

applies where access is "totally and completely prevented—i.e., made impossible" by the civil authority action); *Kean, Miller, Hawthorne, D'Armond McCowan & Jarman, LLP v. Nat'l Fire Ins. Co. of Hartford*, No. CIV. A. 06-770-C, 2007 WL 2489711, at *4 (M.D. La. Aug. 29, 2007) (no coverage when order "encouraged" residents to stay off streets before hurricane, because it did not "actually and completely prohibit access"); *By Dev., Inc. v. United Fire & Cas. Co.*, No. CIV. 04-5116, 2006 WL 694991, *5 (D.S.D. Mar. 14, 2006), *aff'd*, 206 F. App'x 609 (8th Cir. 2006).

WL 450012, at *8 (S.D. Tex. Feb. 15, 2008) (civil authority coverage requires a "close causal link" between property damage and civil authority order); *Syufy Enters. v. Home Ins. Co. of Ind.*, No. 94-0756 FMS, 1995 WL 129229, *2 (N.D. Cal. Mar. 21, 1995) (finding that "causal link between damage to adjacent property and denial of access" to insured's property was absent).

Here, the Complaint admits that the Order and other relevant governmental orders were a response to the "novel coronavirus pandemic" that causes COVID-19. PageID.229-230, ¶¶ 24–28. The Order describes a "significant risk of substantial harm to a large number of people," and states that "further social distancing measures are necessary to be implemented on a statewide basis to prevent the spread of COVID-19." PageID.415; *see also* PageID.421 (similar); PageID.429 (similar). Plaintiffs do not and cannot allege that any of the orders were "a result of [property] damage" or "taken in response to dangerous physical conditions resulting from [property damage] . . ." PageID.275, 381. This is yet another independent reason why Plaintiffs' allegations cannot establish coverage under the Civil Authority provision. *See, e.g.*, *Dickie Brennan*, 636 F.3d at 686 (no civil authority coverage because order was not "'due to' physical damage to property"); *United Air Lines, Inc. v. Ins. Co. of State of Pa.*, 439 F.3d 128, 134 (2d Cir. 2006) (civil authority coverage did not apply where "the government's subsequent decision to halt operations at the Airport indefinitely was based on fears of future attacks" on September 11, 2001, not because of property damage to adjacent property).[8]

---

[8] *See also Kelaher, Connell & Conner, P.C. v. Auto-Owners Ins. Co.*, No. 4:19-CV-00693-SAL, 2020 WL 886120, at *8 (D.S.C. Feb. 24, 2020) (finding no coverage under civil authority provision where governor's executive order, "which started the mandatory evacuation, does not reference any 'damage or destruction of property'"); *Paradies Shops*, 2004 WL 5704715, at *7 (finding no coverage under civil authority provision where order issued after September 11th attacks "was issued as a result of the threat of additional terrorist acts," not due to existing property damage); *South Texas Med. Clinics*, 2008 WL 450012, at *10 (finding no coverage under civil authority provision where "the mandatory evacuation order for Wharton County was issued due to the anticipated threat of damage to the county and not due to property damage that had occurred in Florida and the Gulf of Mexico")

Thus, as a matter of law, Plaintiffs are not entitled to Civil Authority coverage because the Complaint does not allege: (1) that the Order "prohibited" access to Plaintiffs' premises, let alone to "the area immediately surrounding" Plaintiff's premises; or (2) that the Order was the result of or in "response to" property damage. The absence of Civil Authority coverage, which is the relevant policy provision when an insured claims coverage arising from a governmental order, further demonstrates why all of Plaintiffs' claims fail.

### C.   PLAINTIFFS' CLAIMS AS ALLEGED ARE ALSO BARRED BY SEVERAL EXCLUSIONS

As noted above, the Complaint only seeks coverage under the Business Income and Extra Expense coverages. For all of the reasons set forth in section A above, Plaintiffs fail to plead facts that would plausibly satisfy the requirements of the Policies' insuring agreements for Business Income or Extra Expense coverage. But even if Plaintiffs could somehow plead what is required (which they clearly cannot), several exclusions in the Policies still would preclude coverage: (1) the loss of use or loss of market exclusion; (2) the governmental acts or decisions exclusion; and (3) the ordinance or law exclusion.

First, the Policies provide that "[w]e will not pay for loss or damage caused by or resulting from . . . loss of use or loss of market." PageID.286, 394. Plaintiffs allege that the State Health Officer's "orders were the direct cause of Plaintiffs' *loss of the use* of their business premises." PageID.230-231, ¶ 32 (emphasis added). Accordingly, on its face, Plaintiffs' allegations fit squarely within this exclusion. *See, e.g.*, *Schneider Equip., Inc. v. Travelers Indem. Co. of Illinois*, No. CIV. 04-1482-HA, 2006 WL 2850465, at *1, *5-6 (D. Or. Sept. 29, 2006) (where well could not produce anticipated volume of water and was determined to be unusable as a result of a damaged screen, court held that loss of use exclusion, among other exclusions, applied). Moreover,

24

to the extent that Dr. Harris' Order resulted in a loss of market for Plaintiffs' products and services, the "loss of market" exclusion would also apply.

In the Complaint, Plaintiffs maintain that the loss of use exclusion is "unenforceable" because "this entire provision excludes lost business income." PageID.232, ¶ 37. That is simply incorrect. The Business Income coverage applies when there is a suspension of operations "caused by direct physical loss of or damage to property" at the insured premises, and the loss or damage is "caused by or result[s] from a Covered Cause of Loss." PageID.274, 380. In the event of a fire, for example, the suspension of operations is caused by the damage to the property caused by the fire. What Plaintiffs claim here, in contrast, is simply a loss caused by a temporary and partial loss of use of their property by non-employees, and possibly a loss of market for their products and services. Such a loss caused directly by a loss of use and/or loss of market is plainly excluded.

Second, the "Ordinance or Law" exclusion provides as follows:

> We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.
>
> **a. Ordinance Or Law**
>   The enforcement of any ordinance or law:
>   (1)    Regulating the . . . use . . . of any property;
> . . .
>   This exclusion, Ordinance Or Law, applies whether the loss results from:
>           (a)   An ordinance or law that is enforced even if the property has not been damaged.

PageID.284, 392. Here, Plaintiffs' alleged partial loss of use of their business premises arises directly from the Order that regulates the use of the premises by suspending access to "non-employees." PageID.229-231, ¶¶ 27–29, 32–33; PageID.415.   These allegations fall squarely within the language of the ordinance or law exclusion, barring coverage for a loss "caused directly

or indirectly by . . . [t]he enforcement of any ordinance or law . . . [r]egulating the . . . use . . . of any property," and the exclusion makes clear that it applies "regardless of any other cause or event that contributes concurrently or in any sequence to the loss," and "even if the property has not been damaged." Plaintiffs' claims are thus independently barred by this exclusion as well.

Plaintiffs maintain that the ordinance or law exclusion "only applies to actual or proposed construction, repair, or demolition work," PageID.231, ¶ 34, but the plain language of the exclusion contains no such limitation and courts do not construe it in such a narrow manner. The exclusion has been held to apply where, for example, an insured claimed a "loss" resulting from a zoning or other regulation restricting the use of its property. *See*, *e.g.*, *Ira Stier, DDS, P.C. v. Merchants Ins. Grp.*, 7 N.Y.S.3d 365, 367 (N.Y. App. Div. 2015) (ordinance or law exclusion applied where insured claimed business income losses resulting when town building department "prevented the plaintiff from utilizing the premises to engage in their dental business without a proper certificate of occupancy"). The governmental requirement in *Ira Stier* that the insured could not operate a dental office in the insured premises is not materially different, for purposes of applying this exclusion, from Dr. Harris' Order here that a children's drama camp could not, for the time being, allow non-employees at Drama Camp's premises. Plaintiffs further assert that "the complete-shutdown orders of the State Health Officer did not 'regulate' the use of Plaintiffs' property – they prohibited its use for its intended purpose." PageID.231, ¶ 35. But, as Plaintiffs concede in the Complaint and the Order reflects, Plaintiffs' business were only "closed to non-employees," and there was no prohibition on Plaintiffs' employees accessing the premises. PageID.229-230, ¶ 27; PageID.416. Barring certain persons from visiting premises is plainly a regulation of use. If Drama Camp wanted to broadcast children's programming over the Internet during the pandemic from its premises, there would be no prohibition.

26

Third, the "Acts or decisions" exclusion in the Policies provides that "[w]e will not pay for loss or damage caused by or resulting from . . . Acts or decisions . . . of any . . . governmental body." PageID.287, 395. Plaintiffs admit that their losses were caused by the State Health Officer's orders. PageID.230-231, ¶ 32 ("the orders were the direct cause of Plaintiffs' loss of the use of their business premises"). While Plaintiffs allege that this exclusion is "overly broad," PageID.231, ¶ 34, courts have held, to the contrary, that the exclusion applies where, as here, a loss is caused simply by a governmental or other organizational decision and does not relate to physical loss or damage by a separate covered cause of loss. *See, e.g., Johnson Gallagher Magliery, LLC v. Charter Oak Fire Ins. Co.*, No. 13 CIV. 866 DLC, 2014 WL 1041831, at *7 (S.D.N.Y. Mar. 18, 2014) (acts or decisions exclusion barred coverage for time period during which electrical power was preemptively shutdown by the decision of a utility, before physical damage caused by flood occurred).[9]

Thus, even if Plaintiffs could satisfy the requirements of the Policies' insuring agreements on the claims they have alleged, several exclusions would bar coverage.

---

[9] *Worldwide Sorbent Prod., Inc. v. Invensys Sys., Inc.*, No. 1:13-CV-252, 2014 WL 12597394, at *11 (E.D. Tex. July 31, 2014) ("The court finds the acts or decisions exclusion to be unambiguous as applied to three possible causes of loss cited by [the insured]: (1) mistaken installation of an alarm unit instead of an oven controller; (2) acts or omissions of a third party; and (3) sale of an altered, used device by Heatsource."); *Legal Servs. Plan of E. Michigan v. Citizens Ins. Co. of Am.*, No. 278110, 2009 WL 1175514, at *4 (Mich. Ct. App. Apr. 30, 2009) (unpublished) (acts or decisions exclusion applied to loss caused by "construction activity," but "[i]f the construction activity had resulted in a covered cause of loss, [the insurer] would be required to pay for the damage caused by the covered cause of loss"); *Landmark Hosp., LLC v. Cont'l Cas.*, Co., No. CV 01-0691 GLTMLGX, 2002 WL 34404929, at *2 (C.D. Cal. July 2, 2002) ("[t]he policy exclusion of coverage for '[a]cts or decisions, including the failure to act or decide, of any person group, organization or governmental body' is unambiguous and lawful").

27

### D. PLAINTIFFS' DECLARATORY JUDGMENT CLAIM SHOULD ALSO BE DISMISSED AS DUPLICATIVE OF THE BREACH OF CONTRACT CLAIM AND BECAUSE PLAINTIFFS HAVE AN ADEQUATE REMEDY AT LAW

Plaintiffs' declaratory judgment claim, Count I, fails for the additional, independent reasons that the declaratory judgment claim is duplicative of the breach of contract claim, and because Plaintiffs have an adequate remedy at law. First, courts in the Eleventh Circuit regularly dismiss a plaintiff's declaratory judgment claim where it involves the same factual dispute as a breach of contract claim. Here, Plaintiffs seek the same relief on their declaratory relief claim as they seek in their breach of contract claim. *Compare* PageID.236, ¶ 55 (seeking "a judgment declaring that their losses of business income and any extra expenses are covered losses under the specified coverage forms") *with* PageID.237, ¶ 61 (similarly seeking "a judgment against Mt. Hawley in the amount of their lost business income and any extra expenses"). Accordingly, because "[p]laintiffs' two claims involve the same factual dispute," the Court should dismiss Count I of the Complaint. *Nahmad v. AIG Prop. Cas. Co.*, No. 18-23622-CIV, 2019 WL 7971655, at *3 (S.D. Fla. Apr. 25, 2019) (dismissing the insured's declaratory judgment claim because it was "duplicative of the breach of contract claim"); *Remedios v. Nat'l Fire & Marine Ins. Co.*, No. 1:19-CV-21559-KMM, 2019 WL 7956170, at *4 (S.D. Fla. Aug. 29, 2019) ("a 'court must dismiss a claim for declaratory judgment if it is duplicative of a claim for breach of contract, and, in effect, seeks adjudication on the merits of the breach of contract claim'").

Second, the declaratory judgment claim also fails because if Plaintiffs' claims were meritorious, there would be an adequate remedy at law—money damages for breach of contract—which they have alleged in Count II.[10] For both of these reasons, in addition to those set forth above, the Court should dismiss Count I.

---

[10] *See, e.g.*, *Bolin v. Story*, 225 F.3d 1234, 1242 (11th Cir. 2000) (requiring plaintiff to have no adequate remedy at law to maintain a declaratory judgment action); *Ritterman v. Lexington Ins. Co.*, No. 18-61239-CIV, 2018 WL

### E.   THE PUTATIVE CLASS CLAIMS MUST BE DISMISSED WHERE PLAINTIFFS' INDIVIDUAL CLAIMS FAIL

To the extent Plaintiffs attempt to plead claims on behalf of a proposed class (PageID.232-236, ¶¶ 40–51), those allegations cannot survive where Plaintiffs' individual claims fail to state a claim. *See, e.g.*, *Bass v. Butler*, 116 F. App'x 376, 385 (3d Cir. 2004) ("Because no class has been certified here, if [the named plaintiff's] claim fails, the entire action must be dismissed."); *Henley v. Turner Broad. Sys., Inc.*, 267 F. Supp. 3d 1341, 1357 (N.D. Ga. 2017) (explaining that putative class allegations cannot survive when named plaintiff's claim is dismissed); *Parm v. Nat'l Bank of California, N.A.*, 242 F. Supp. 3d 1321, 1342 (N.D. Ga. 2017) ("When considering a motion to dismiss filed in a putative class action before certification of a class, the Court considers only Plaintiff's individual allegations.").

## V.   CONCLUSION

Plaintiffs' claims against Mt. Hawley must fail as a matter of law for all of the reasons set forth in further detail above.  All of the claims alleged against Defendant Mt. Hawley Insurance Company should therefore be dismissed, in their entirety, and with prejudice.

---

7252902, at *2 (S.D. Fla. Dec. 3, 2018) (dismissing insured's declaratory relief claim both as duplicative of breach of contract claim, "and because Plaintiff has an adequate remedy at law – a claim for breach of contract"); *State Farm Mut. Auto. Ins. Co. v. Altamonte Springs Diagnostic Imaging, Inc.*, No. 6:11-CV-1373-ORL-31, 2012 WL 1565387, at *4 (M.D. Fla. May 2, 2012) (dismissing declaratory judgment claim, concluding that insured had "a sufficient remedy at law for damages").

Respectfully submitted,

**DEFENDANT,**
**MT. HAWLEY INSURANCE COMPANY,**

 */s/ Brenen G. Ely*
Brenen G. Ely
ELY & ISENBERG, LLC
2100-B Southbridge Parkway
Suite 380
Birmingham, AL 35209
Tel. 205-313-1200
Fax 205-313-1201
E-mail: bely@elylawllc.com

**-and-**

Wystan M. Ackerman
(*pro hac vice* motion forthcoming)
Wm Maxwell Daley
(*pro hac vice* motion forthcoming)
**ROBINSON & COLE LLP**
280 Trumbull Street
Hartford, CT 06103
Phone:  860-275-8200
Fax:  860-275-8299
E-mail: wackerman@rc.com
E-mail: wdaley@rc.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 9, 2020, a copy of the foregoing was filed electronically. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

*/s/ Brenen G. Ely*