IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **DRAMA CAMP PRODUCTIONS, INC., and J&M, LLC,** | )<br>)<br>)<br>) |
| **Plaintiffs,** | )<br>) |
| v. | ) CIVIL ACTION NO. 1:20-CV-266-JB-MU<br>) |
| **MT. HAWLEY INSURANCE COMPANY.,** | )<br>)<br>) |
| **Defendants.** | )<br>) |

**ORDER**

This matter is before the Court on Defendant Mt. Hawley Insurance Company's ("Mt. Hawley" or "Defendant") Motion to Dismiss (Doc. 14) and Memorandum in Support (Doc. 15). The Motion has been briefed and is ripe for review. After careful consideration, the Court **grants** Defendant's Motion.

**I.   BACKGROUND**

Plaintiff Drama Camp Productions, Inc. ("Drama Camp") is an Alabama corporation which operates a children's drama studio in Mobile, Alabama. (Doc. 5, PageID.223 – 224). Plaintiff J&M LLC, d/b/a Shades ("Shades") is an Alabama limited liability company headquartered in Orange Beach, Alabama, that sells sunglasses and sportswear in Alabama. (*Id.*). Defendant is an Illinois insurance company. Plaintiffs purchased "all-risk" insurance policies from Defendant to cover their respective properties from September 25, 2019 to September 25, 2020 (Drama Camp) and September 21, 2019 to September 21, 2020 (Shades). (*Id.* at PageID.224). The Parties do not dispute the policies' language and aver their policies present identical and/or materially identical

1

language.  (Doc. 5, PageID.225).  Plaintiffs' Building and Personal Property Coverage provides: "[Defendant] will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." (Doc. 5-2, PageID.364).  Plaintiffs' Business Income (and Extra Expense) Coverage Form provides:

> **A. Coverage**
> **1. Business Income**
> . . .
> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss.  . . .

(*Id.* at PageID.380).  The policy does not define "direct physical loss of . . . property."  Plaintiffs' policy defines Extra Expense in the following way:

> **2. Extra Expense**
> . . .
> **b.** Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.
>
> We will pay Extra Expense (other than the expense to repair or replace property) to:
>
> **(1)** Avoid or minimize the "suspension" of business and to continue operations at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location.
>
> **(2)** Minimize the "suspension" of business if you cannot continue "operations".

> We will also pay Extra Expense to repair or replace property, but only to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form.

(*Id.* at PageID.380 – 381).

The "period of restoration" in Plaintiffs' agreement is defined as follows:

> **3.** "Period of restoration" means the period of time that:
>
> **a.** Begins:
>
> **(1)** 72 hours after the time of direct physical loss or damage for Business Income Coverage; or
>
> **(2)** Immediately after the time of direct physical loss or damage for Extra Expense Coverage;
>
> caused by or resulting from any Covered Cause of Loss at the described premises; and
>
> **b.** Ends on the earlier of:
>
> **(1)** The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or
>
> **(2)** The date when business is resumed at a new permanent location.
>
> "Period of restoration" does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:
>
> **(1)** Regulates the construction, use or repair, or requires the tearing down, of any property; or
>
> **(2)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

(*Id.* at PageID.282; Doc. 5-2, PageID.388).

3

On March 13, 2020, President Trump declared the COVID-19 pandemic a national emergency. (Doc. 5, PageID.229). Following President Trump's declaration, Alabama Governor Kay Ivey declared the COVID-19 pandemic a State public health emergency and directed State agencies to exercise their statutory and regulatory authority to implement measures to curb the rise of COVID-19 cases in the State. (*Id.*). On March 27, 2020, Dr. Scott Harris, the Alabama State Health Officer, entered a Statewide Order (the "Order") which provided certain non-essential businesses would be closed to non-employees effective 5:00 PM the following day. (*Id.*). Plaintiffs' businesses were considered non-essential. *Id.* At 5:00 PM on April 30, 2020, retail establishments could reopen at fifty (50) percent capacity. (*Id.* at PageID.230). This allowed Shades to resume operations. When Plaintiffs filed their Amended Complaint, Drama Camp remained closed. (*Id.*). Plaintiffs allege they suffered a substantial loss of business income because of the Order. (*Id.* at PageID.230).

Plaintiffs filed claims for their business income losses with Defendant, which Defendant denied. (*Id.*). Plaintiffs assert they suffered direct physical losses of their property due to the Order. (*Id.*). Plaintiffs filed suit on their behalf and on behalf of similarly situated parties. (*Id.* at PageID.232). In their Amended Complaint, Plaintiffs seek a declaratory judgment of their rights under the policy (*Id.* at PageID.236) and assert a claim for breach of contract. Plaintiffs' breach of contract claim alleges Defendant breached the Parties' agreement by "deny[ing] coverage for Plaintiffs' and the Class members' losses of business income[.]" (*Id.* at PageID.237).

II.   **STANDARD OF REVIEW**

Rule 12(b)(6), Fed. R. Civ. P., provides a court may dismiss a claim for failure to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Conclusory statements, assertions or labels will not survive a 12(b)(6) motion to dismiss. *Id*. A plaintiff's claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.; see also Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citation omitted). "Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions." *Iqbal*, 556 U.S. at 678.

## III.  DISCUSSION

Defendant contends Plaintiffs' Amended Complaint is due to be dismissed for failing to state a claim because: (1) Plaintiffs failed to allege a direct physical loss of its property required to trigger coverage (Doc. 15, PageID.490 – 494); (2) Plaintiffs' temporary inability to use its property for its intended purpose did not constitute a direct physical loss of property (*Id.* at PageID.494 – 499); and (3) Plaintiffs' claims of lost business income are barred by the noted policy exclusions. (*Id.* at PageID.501 – 505).

In their Opposition, Plaintiffs assert the Court should certify the question of whether they have suffered a direct physical loss of property to the Alabama Supreme Court. (Doc. 22, PageID.546). Alternatively, Plaintiffs contend they adequately alleged a direct physical loss of property because the State's Order prevented it from using its property for its intended purpose.

(*Id.* at PageID.546 – 552).¹ Plaintiffs also argues the term "period of restoration" contained in the polices "embraces" their interpretation that a reasonable insured would understand a loss of usability of property to qualify as a direct physical loss of property (*Id*. at PageID.552), and that Defendant's cited policy exclusions are inapplicable. (*Id.* at PageID.553).

In Reply, Defendant maintains Plaintiffs mischaracterized its Motion to Dismiss (Doc. 24, PageID.569), and reiterates its position that a reasonable insured would not understand a direct physical loss of property to encompass a temporary inability to use one's property for its intended purpose. (*Id.* at PageID.571 – 574). Defendant also notes Plaintiffs' interpretation runs contrary to the policy as a whole (*Id.* at PageID.574 – 576) and continues to maintain the exclusions relied upon to deny Plaintiffs' claims remain applicable. (*Id.* at PageID.576 – 580).

### A.   Alabama insurance contract construction.

Before considering the parties' arguments, the Court finds it appropriate to review Alabama's principles of insurance contract construction. Matters of insurance contract construction under Alabama law are well-settled. Generally,

> [t]he issue of whether a contract is ambiguous or unambiguous is a question of law for a court to decide. If a word or phrase is not defined in an insurance policy, then the court should construe the word or phrase according to the meaning a person of ordinary intelligence would reasonably give it.

*Crook v. Allstate Indemnity Company*, 2020 WL 3478552, *3 (Ala. June 26, 2020) (internal brackets, citations, and quotation marks omitted). Further,

---

¹ Plaintiffs refer to the full phrase "direct physical loss of or damage to property" in their briefing, (Doc. 22, PageID.546), but only present argument on the portion of the phrase which reads "direct physical loss of . . . property." (*Id*. at PageID.547 – 552). Therefore, the Court will confine its analysis to that portion of the contract language.

6

> [t]he court should not define words it is construing based on technical or legal terms. When analyzing an insurance policy, a court gives words used in the policy their common, everyday meaning and interprets them as a reasonable person in the insured's position would have understood them. If, under this standard, they are reasonably certain in their meaning, they are not ambiguous as a matter of law and the rule of construction in favor of the insured does not apply. A policy is not made ambiguous by the fact that the parties interpret the policy differently or disagree as to the meaning of a written provision in a contract. However, if a provision in an insurance policy is found to be genuinely ambiguous, policies of insurance should be construed liberally in respect to persons insured and strictly with respect to the insurer.

*Id*. at *4.  *See also Nationwide Mut. Ins. Co. v. Thomas*, 103 So.3d 795, 804 (Ala. 2012) (citing *Tate v. Allstate Ins. Co.*, 692 So.2d 822 (Ala. 1997)).  Further, "an insurance policy must be read as a whole.  The provisions of the policy cannot be read in isolation, but, instead, each provision must be read in context with all other provisions."  *Cowart v. Geico Cas. Co.*, 296 So.3d 266, 270 (Ala. 2019) (quoting *Allstate Ins. Co. v. Hardnett*, 763 So.2d 963, 965 (Ala. 2000) (quoting *Attorneys Ins. Mut. of Alabama, Inc. v. Smith, Blocker & Lowther, P.C.*, 703 So.2d 866, 870 (Ala. 1996)).

**B.     The Court finds certification to the Alabama Supreme Court unnecessary.**

Rule 18 of the Alabama Rules of Appellate Procedure states federal courts may certify "determinative" questions of law where "there are no clear controlling precedents in the decisions of the supreme court of this state" to receive "instructions concerning such questions or propositions of state law[.]" Ala. R. App. P. 18(a).  In deciding whether to certify a question to the Alabama Supreme Court, courts are instructed to consider these factors:

> (1) the closeness of the question; (2) the existence of sufficient sources of state law; (3) the degree to which considerations of comity are relevant in light of the particular issue and case to be decided; (4) the likelihood of recurrence of a particular issue; and (5) the practical limitations of the certification process.

7

*Arnold v. State Farm Fire and Casualty Company*, 2017 WL 5451749, *4 (S.D. Ala. 2017) (*citing Smigiel v. Aetna Casualty & Surety Co.*, 785 F.2d 922, 924 (11th Cir. 1986)); *see also Heatherwood Holdings, LLC v. First Commer. Bank*, 61 So.3d 1012, 1026 (Ala. 2010) (declining to answer a certified question where Alabama law was sufficient to guide the court in answering the certified question).

Plaintiffs insist certification is appropriate because any attempt by this Court to determine the meaning of the policy language at-issue would constitute an "*Erie*[2] guess" and the likelihood that COVID-19 cases will repeat in this district is highly probable. (Doc. 22, PageID.545 – 546). The Court is not persuaded that certification is necessary and shall address the merits of Plaintiffs' arguments, especially as the question presented is not sufficiently close.

### C. Plaintiffs have not alleged a direct physical loss of its property.

Plaintiffs first argue they stated claims for direct physical losses of property because the Order prevented them from using their respective properties for their intended purposes. Plaintiffs maintain the loss of their ability to use their property constitutes a direct physical loss of property. (Doc. 22, PageID.546 – 548). To support this proposition, Plaintiffs rely upon *Total Intermodal Serv., Inc. v. Travelers Prop. Cas. Co. of Am.*, 2018 WL 3829767 (C.D. Cal. July 11, 2018) and *State Farm Mut. Auto. Ins. Co. v. Rodriguez*, 987 N.E.2d 896 (Ill. App. 2013). That reliance is misplaced. In both instances, the allegations of loss concerned complete and permanent dispossession of property. *See Total Intermodal Services Inc.*, 2018 WL 3829767, *3 – 4;

---

[2] *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).

*Rodriguez*, 987 N.E.2d at 898. Plaintiffs' Amended Complaint, however, does not allege complete and permanent dispossession of property.

Likewise, the Court is not persuaded by Plaintiffs' argument distinguishing the phrases "loss of" and "loss to" physical property. (*Id.* at PageID.549). Plaintiffs attempt to support this argument by relying on several non-binding opinions, including *Sentinel Management Co. v. New Hampshire Ins. Co.*, 563 N.W.2d 296, 300 (Minn. App. 1997); *Farmers Ins. Co. of Oregon v. Trutanich*, 858 P.2d 1332, 1336 (Or. App. 1993); *Murray v. State Farm Ins. Fire and Cas. Co.*, 509 S.E.2d 1, 16 (W.Va. 1998); *TRAVCO Ins. Co. v. Ward*, 715 F. Supp. 2d 699, 701 (E.D. Va. 2010). The Court finds these authorities to materially differ.

Several cases relied upon by Plaintiffs addressed the phrase "direct physical loss *to* property." Others concerned physical contamination of premises rendered unusable due to an event which had a tangible effect on the property. *See e.g., Western Fire Ins. Co. v. First Presbyterian Church*, 437 P.2d 52, 55 (Colo. 1968) ("[T]his particular 'loss of use' was simply the consequential result of the fact that because of the accumulation of gasoline . . . the premises became so infiltrated and saturated as to be uninhabitable . . ."); *Trutanich*, 858 P.2d at 1335; *Oregon Shakespeare Festival Association v. Great American Insurance Company*, 2016 WL 3267247, *2 (D. Or. 2016) (finding physical loss of property where wildfire smoke infiltrated the covered premises), *vacated on other grounds by Oregon Shakespeare Festival Association v. Great American Insurance Company*, 2017 WL 1034203 (D. Or. 2017).

Because Plaintiffs have failed to allege a direct physical loss of or damage to their respective properties, Defendant's Motion to Dismiss is due to be granted.

### D. A reasonable Insured would not understand the policy to cover Plaintiffs' purely economic losses incurred due to the Order.

As this Court and others have noted, state-specific case law is scant. *See Hillcrest Optical, Inc. v. Cont'l Cas. Co.*, 2020 WL 6163142 (S.D. Ala. Oct. 21, 2020) (citing *Henry's Louisiana Grill, Inc., et al., v. Allied Insurance Company of America*, 2020 WL 5938755, *4 (N.D. Ga. October 6, 2020); *Malaube, LLC v. Greenwich Insurance Company*, 2020 WL 5051581, *6 (S.D. Fla. August 26, 2020)). However, as in *Hillcrest*, there is sufficient authority to guide the Court's decision on the meaning of the phrase at-issue.

This Court has noted, "direct" and "physical" modify the word "loss" in the phrase "direct physical loss of property." Therefore, analysis of this phrase must account for both words as they apply to the loss of property Plaintiffs must have suffered to trigger coverage. *See Hillcrest Optical,* 2020 WL 6163142 at *5 (citing H*enry's Louisiana Grill, Inc.,* 2020 WL 5928755 at *4; *Malaube, LLC*, 2020 WL 5051581 at *7). The Alabama Supreme Court and the insurance treatise upon which that court frequently relies generally require some tangible alteration or disturbance to property to demonstrate a physical loss of property. *See Hillcrest Optical,* 2020 WL 6163142 at *6 – 7 (collecting authority). This Court has found the word "direct," when modifying the word "loss," to mean immediate or proximate. *Id*. at 6.

Plaintiffs maintain their inability to use their property constitutes a direct physical loss. The Court does not agree. Plaintiffs' loss of usability did not result from an immediate occurrence which tangibly altered or disturbed their property in some perceptible way. The Order merely temporarily halted Plaintiffs' business operations.

Under Plaintiffs' interpretation, possession carries the same meaning as usability; therefore, loss of possession equals the inability to use something. This argument has been

10

unsuccessful in this Circuit. *See Hillcrest Optical,* 2020 WL 6163142 at *7; *Northeast Georgia Heart Center, P.C. v. Phoenix Insurance Company*, 2014 WL 12480022, *1 (N.D. Ga. May 23, 2014) (applying Georgia law: "Without doubt, losing physical possession may qualify as a direct physical loss. Nonetheless, there is a difference between a loss of physical possession and a loss of use. This difference is critical because the policy covers only lost business income *caused by* direct physical loss. Even though plaintiff suffered a direct physical loss by returning the generator, that loss did not cause plaintiff's lost business income."); *Malalube,* 2020 WL 5051581 at *8 (applying Florida law: "Although the plaintiff in *Mama Jo's* failed to put forth any evidence that his cleaning claim constituted a direct physical loss, he at least alleged that there was a physical intrusion (i.e. dust and debris) into his restaurant. Plaintiff has done nothing similar in this case. Plaintiff merely claims that two Florida Emergency Orders closed his indoor dining. But, for the reasons already stated, this cannot state a claim because the loss must arise to actual damage."); *Infinity Exhibits, Inc. v. Certain Underwriters at Lloyd's London Known as Syndicate PEM 4000*, 2020 WL 5791583, at *4 (M.D. Fla. Sept. 28, 2020) (citing *Malaube*, 2020 WL 5051581 at *8) (applying Florida law: "[T]he action should be dismissed because the policy required direct physical loss or property damage and plaintiff had alleged 'merely [ ] economic losses—not anything tangible, actual, or physical.'"); *Pappy's Barber Shops*, *Inc*. v. *Farmers Group, Inc*., 2020 WL 5500221, at *4 (S.D. Cal. Sept. 11, 2020) (applying California law); *Henry's Louisiana Grill, Inc., et al., v. Allied Insurance Company of America*, 2020 WL 5938755 at *4 (applying Georgia law: "This interpretation of the contractual language exceeds any reasonable bounds of possible construction, pushing the words individually and collectively beyond what any plain meaning can support.").

The Court finds the guidance from Alabama courts, as well as those above, persuasive and concludes a reasonable insured would not understand a "direct physical loss of property" to have occurred due to the State's Order.

**E.     A reasonable insured would not understand the Order to require a "repair" under the policy.**

Plaintiffs next argue the "period of restoration" contained in the policy contemplates the inability to use their respective properties as a "direct physical loss of property." (Doc. 22, PageID.552 – 553). Specifically, Plaintiffs argue their property required "repair" because the Order rendered them unusable and the Second Order returned them to a "sound or healthy state." (*Id.*). Plaintiffs' Business Income Coverage Forms provide Defendant "will pay for the actual loss of Business Income [Plaintiffs] sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration' [.]" (Doc. 5-2, PageID.380). The "'suspension' must be caused by direct physical loss of or damage to property . . . ." (*Id.*). The period of restoration begins: "(1) 72 hours after the time of direct physical loss or damage for Business Income Coverage; or (2) [i]mmediately after the time of direct physical loss or damage for Extra Expense Coverage." (*Id.* at PageID.388). The period of restoration ends "on the earlier of: (1) [t]he date when the property . . . should be repaired, rebuilt, or replaced with reasonable speed and similar quality; or (2) [t]he date when business is resumed at a new permanent location." (*Id.*).

It is apparent from the above that a "direct physical loss of property" contemplates the tangible alteration of property necessitating a party's absence to fix it or a party's beginning operations elsewhere. The "period of restoration" expressly assumes the insured repairs, rebuilds or replaces the property. This begs the question: how could the Order necessitate some repair? In answer to this, Plaintiffs argues a "repair" in certain contexts includes "restor[ing] [the

property] to a sound or healthy state." (Doc. 22, PageID.553).  But Plaintiffs claim their property was not in a sound state only because they could not use it.  The Order did not dispossess them of their property, nor did it tangibly alter it.  Plaintiffs' inability to use their property was not caused by an unsound and or unhealthy condition of the property itself, which necessitated repair, rebuilding, or replacement.

The Court is not persuaded that Plaintiff's interpretation of "repair" is one shared by a reasonable insured.  Rather, the meaning generally given to "repair" in Alabama and elsewhere indicates a reasonable insured would understand a "repair" to become necessary only upon a tangible alteration of property.  *See Hillcrest Optical, Inc.* 2020 U.S. Dist. LEXIS 195273 at *22 (collecting authorities).

F.   **CONCLUSION**

Defendant Mt. Hawley Insurance Company's Motion to Dismiss (Doc. 14) is **GRANTED**. Plaintiffs' Amended Complaint is **DISMISSED WITH PREJUDICE**.

**DONE and ORDERED** this 30th day of December, 2020.

/s/ JEFFREY U. BEAVERSTOCK
UNITED STATES DISTRICT JUDGE